JOHNSON-FOSTER COMPANY *vs.* D'AMORE CONSTRUCTION Co. & others.

Suffolk.   May 4, 1943. — July 14, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Housing. Bond,* Public work, Parties. *Contract,* What constitutes, Parties, Consideration, Under seal, Construction. *Public Work. Corporation,* What constitutes, Housing authority. *Municipal Corporations,* Housing, Security for public work. *Electricity.*

A housing authority established in a municipality under the Housing Authority Law, inserted in G. L. (Ter. Ed.) c. 121 by St. 1938, c. 484, § 1, is a corporation distinct from the municipality and is not an agency or department thereof.

A surety bond, given by a building contractor to a local housing authority and conditioned upon performance of a construction contract between them and upon payment by the contractor for labor, materials and the hire of equipment in connection with his work under the contract, was not a bond of the kind provided for in G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361.

A continuing offer of security to any persons who might furnish labor or materials or rent equipment in connection with construction work done for a local housing authority might be found to have been made by the obligor and the surety in a sealed surety bond given to the housing authority by the building contractor, conditioned in part on his payment for such labor, materials and hire of equipment and containing a provision that, in addition to the obligation to the housing authority, the bond was also for the benefit of such furnishers of labor and materials and renters of equipment; and, upon the acceptance of such offer by their furnishing labor or material or renting equipment with knowledge of and in reliance upon the bond, simple contracts supported by ample consideration arose directly between them and the contractor and the surety.

A claim for the installation of electrical transformers in connection with a building project was covered by a bond conditioned on the contractor's paying for material and labor furnished and performed "for or on account of . . . [the building] contract" and the hire of "appliances or equipment used or employed in the execution" thereof, whether the transformers became part of the completed project or were merely hired during the progress of the work; and electricity furnished on the job was "material" within the provisions of the bond; but an insurance company's claim for the premium on a workmen's compensation policy was not covered by the bond.

BILL IN EQUITY, filed in the Superior Court on June 23, 1941.

The suit was reported by *Dowd*, J.

*M. McConnell*, for Aetna Casualty and Surety Company.

*A. P. Doyle*, (*F. Vera* with him,) for New Bedford Housing Authority and others.

*V. L. Hennessy*, for C. H. Cronin, Inc.

*J. D. Kenney*, for John Duff, Jr., and another, submitted a brief.

*T. F. O'Brien & G. P. Walsh*, for Marsh Furniture Company, submitted a brief.

*H. A. Lider*, for Acushnet Saw Mills Co., submitted a brief.

QUA, J. This suit was heard upon a "Statement of Agreed Facts."

Under date of March 18, 1940, D'Amore Construction Co., hereinafter called the contractor, entered into a general contract with New Bedford Housing Authority, hereinafter called the housing authority, for the construction of a low cost housing project aided by a loan from the United States Housing Authority.   On May 20, 1940, the contractor as principal, and the Aetna Casualty and Surety Company as surety, gave to the housing authority "as obligee" a "Performance and Payment Bond," in the sum of $693,830 and in "the standard form required by" the United States Housing Authority, for the faithful performance of the principal contract.   The contractor paid the surety for this bond a premium of $10,407.45.   The contractor performed work under the contract until on or about May 8, 1941, when it acknowledged its inability to proceed further.   It had then been paid $573,314.40 on account of the contract price and additions thereto.   Thereafter the housing authority entered into an agreement with a new contractor for the completion of the work.   This bill is prosecuted by a large number of original plaintiffs and intervener plaintiffs, all of whom as subcontractors or materialmen furnished to the original contractor labor and material or material alone which went into and became part of the completed structure, or rented equipment to the contractor for use on this contract, with the possible exception of New Bedford Gas and Edison Light Company and Liberty Mutual Insurance Company, the nature of whose claims will later appear.   All make claim from the surety under the bond for unpaid balances due or alleged to be due them from the contractor.   It is agreed that all the claimants knew and relied upon the terms of the bond "when they submitted bids and contracted to perform work or furnish material and rent equipment, [or to furnish?] public utility service."   The penal sum of the bond exceeds the total of all claims.

The trial judge entered an interlocutory decree that each plaintiff might recover, leaving the amounts to be determined at further hearings.   He then stayed further proceedings and reported "the question" to this court.   G. L. (Ter. Ed.) c. 214, § 30.

Some of the plaintiffs, having filed sworn statements of their claims with the city clerk of New Bedford, or with both the city clerk and the housing authority, contend that the bond was a statutory bond given under the terms of G. L. (Ter. Ed.) c. 149, § 29, as appearing in St. 1938, c. 361. This contention is unsound. That section requires officers or agents "who contract in behalf of any county, city or town for the construction or repair of public buildings or other public works" to "obtain sufficient security, by bond or otherwise," for the payment for labor, materials and hired equipment used or employed in such construction or repair. But the housing authority was not itself a county, city or town, and it was not the agent or a department of the city of New Bedford. The statutes establishing housing authorities make it plain that such an authority, although organized by and in each city and town in coöperation with the State, is nevertheless, when organized, a complete corporate entity in itself, distinct from the municipal corporation within whose territory it is set up, and exercising its powers in its own independent right. G. L. (Ter. Ed.) c. 121, §§ 26J–26M, 26R, 26T, 26U, 26W, 26X (f), (i), 26Z, 26DD, 26FF, 26GG, as inserted by St. 1938, c. 484, § 1. See *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288. It is an instrumentality of government, but it is also a corporation having the contracting powers of a corporation and suable as such "in the same manner as a private corporation." § 26FF. Its contracts are its own and are not those of the municipality. § 26GG. Moreover, by the express provisions of § 26FF, the real estate of a housing authority is not subject to ordinary liens for labor and material under c. 254, but the provisions of § 28 of c. 149, relating to actions for labor personally performed, are applicable to housing authorities. If it had been the intention of the Legislature that § 29 of c. 149, as amended, relating to bonds for labor performed or furnished and materials and hired equipment used, should also be applicable to housing authorities, there would have been an express provision to that effect.

But although the bond cannot take effect as a statutory bond, it is valid as the basis of a common law obligation,

and all parties who, in reliance upon it, have furnished material or labor or rented equipment have become entitled to its benefits by reason of its peculiar terms.   After the usual condition for faithful performance of the principal contract and the payment for labor and materials and the hire of equipment, intended as protection to the housing authority, the bond contains this paragraph: "In addition to the obligations of the undersigned to the New Bedford Housing Authority hereunder this Bond is also made for the use and benefit of all persons, firms and corporations, who may furnish any material or perform any labor for or on account of said contract, or rent or hire out any appliances or equipment used or employed in the execution of said contract, and they and each of them are hereby made obligees hereunder the same as if their own proper respective names were written herein as such, and they and/or each of them may proceed or sue hereon."

This paragraph was obviously intended to give direct contract rights to subcontractors and others who came within its terms to the same extent as if it had been originally given to them and they had been originally named in it.   The bond constituted a standing offer of security to all who, in reliance upon it, should accept the offer by bringing themselves within its terms through the actual furnishing of material or the performing of labor or the renting or hiring out of appliances or equipment used or employed in the execution of the contract.   In *Saunders* v. *Saunders*, 154 Mass. 337, at page 338, the possibility is suggested that a covenant might "purport to be a continuing offer or promise on the part of the defendant, as in the case of a letter of credit or an offer of reward."   The same idea underlies the reasoning in *Hudson Real Estate Co.* v. *Tower*, 156 Mass. 82.   And see *Loring* v. *Boston*, 7 Met. 409; *Bishop* v. *Eaton*, 161 Mass. 496; *Rome* v. *Gaunt*, 246 Mass. 82, 94. This is not inconsistent with the theory that ordinarily no one not presently identified as a party to a sealed instrument at the time of its delivery can maintain an action upon it.   See *Stevens* v. *Hay*, 6 Cush. 229; *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381, 383;

*Saunders* v. *Saunders*, 154 Mass. 337; *Hudson Real Estate Co.* v. *Tower*, 156 Mass. 82; *Congress Construction Co.* v. *Worcester Brewing Co.* 182 Mass. 355, 358; *Cavanaugh Bros. Horse Co.* v. *Gaston*, 255 Mass. 587, 590; Am. Law Inst. Restatement: Contracts, §§ 95, 108; Williston on Contracts (Rev. ed.) § 401. Here the suit is not strictly upon the bond as originally delivered to the housing authority. It is upon obligations of the makers of the bond springing into existence after the original delivery of the bond as the result of the operation of ordinary rules of offer and acceptance. ·The fact that the offer of a unilateral contract to be accepted by a performance on the part of the offeree happens to be contained in a paper in the form of a bond given to a third party does not preclude the operation of those rules when the offeree, with knowledge of the offer and in reliance upon it, performs the required act. There was ample consideration, as intended by the parties, for such new obligations in the labor or material furnished or equipment rented by each plaintiff in reliance upon the provisions of the bond hereinbefore set forth. There are numerous instances where a seal not required for the validity of a contract has been treated as surplusage in order to carry out the expressed intention of the parties through resort to the rules applicable to simple contracts. See *Seretto* v. *Schell*, 247 Mass. 173, 176, and cases cited; *Alfano* v. *Donnelly*, 285 Mass. 554, 556, 557; *Adamowicz* v. *Iwanicki*, 286 Mass. 453; *Exchange Realty Co.* v. *Bines*, 302 Mass. 93, 99.

The surety relies upon the case of *Central Supply Co.* v. *United States Fidelity & Guaranty Co.* 273 Mass. 139. But the bond in that case contained no provisions intended to create a direct contract liability between the plaintiffs and the surety, and the plaintiffs did not furnish the materials in reliance upon the bond. See page 142. See *A. L. Smith Iron Works* v. *Maryland Casualty Co.* 275 Mass. 74; *Newbury* v. *Lincoln*, 276 Mass. 445, 450, 451. And this case is not within the authority of *Metropolitan Pipe & Supply Co.* v. *D'Amore Construction Co.* 309 Mass. 380, because the bond in that case, although it contained provisions for

the benefit of subcontractors and materialmen similar to those found in the bond now before us, was nevertheless given under the statute, and the statutory procedure had not been followed.

The argument has been pressed that the plaintiffs cannot succeed because of the Massachusetts rule that a third person cannot sue on a contract to which he is not himself a party. *Mellen* v. *Whipple*, 1 Gray, 317. *Exchange Bank of St. Louis* v. *Rice*, 107 Mass. 37. But our decision proceeds upon the theory that because of the wording of the bond in this case there was a direct contractual relation between the plaintiffs and the surety. See Williston on Contracts (Rev. ed.) § 372. The third person beneficiary rule has no application here.

The view we take makes it unnecessary to consider whether the plaintiffs might prevail on the alternative ground that under the wording of the bond the housing authority held the obligation of the contractor and the surety in trust for their benefit. See *Krell* v. *Codman*, 154 Mass. 454; *Boyden* v. *Hill*, 198 Mass. 477, 487, 488; *Terkelson* v. *Peterson*, 216 Mass. 531; Williston on Contracts (Rev. ed.) § 355.

The claim of New Bedford Gas and Edison Light Co., part of which is "for the installation of transformers" and part "for the furnishing of electricity in connection with" the contract, requires separate comment. The question is whether this claimant comes within the words, "who may furnish any material or perform any labor for or on account of said contract, or rent or hire out any appliances or equipment used or employed in the execution of said contract." Whether the transformers became part of the completed project or were merely hired during the progress of the work does not clearly appear, but in view of the breadth of the language just quoted, and construing the agreed facts with regard to their context, we are of opinion that the item for transformers should be taken to be either for labor performed and material furnished "for or on account" of the principal contract or for "appliances or equipment" rented or hired out and "used or employed" in the execution of the con-

tract. Since the plaintiffs are not proceeding under the statute, the scope of their claims is not limited to items that would be allowable under the mechanics' lien laws and is not necessarily to be measured by G. L. (Ter. Ed.) c. 30, § 39, or c. 149, § 29, even in their present amended forms. See *George H. Sampson Co.* v. *Commonwealth*, 202 Mass. 326; *American Casting Co.* v. *Commonwealth*, 274 Mass. 1. With some hesitation we are also inclined to think that even electricity furnished comes within the quoted words. From the physical standpoint electricity is not a material substance, but from the standpoint of parties who are selling and buying it at a price for measured and ascertained quantities it may well be regarded as "material," especially since it produces certain definite results in directly forwarding the progress of the work in proportion to the amount used and is itself expended in the process. The reasons for giving security to a person supplying it to a contractor are the same as in the case of materials of a tangible character, and we think that such a person should be held to be within the protection of the bond.

We cannot, however, go to the length of including the claim of Liberty Mutual Insurance Company for premiums on a workmen's compensation policy. *Bay State Dredging & Contracting Co.* v. *W. H. Ellis & Son Co.* 235 Mass. 263, 267.

The result is that the interlocutory decree is to be modified by excepting therefrom the Liberty Mutual Insurance Company, and as so modified is affirmed. A decree is to be entered dismissing the intervening petition of Liberty Mutual Insurance Company.

*Ordered accordingly.*