WAITE HARDWARE COMPANY *vs.* ARDINI & PFAU, INC. &
others.

Worcester.   September 22, 1959. — November 3, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Bond,* Public work, Parties, Private building project.   *Contract,* What
    constitutes.   *Massachusetts Turnpike Authority.   Public Works.*
    *Words,* "In behalf of the Commonwealth," "Privately owned land."

Before the effective date of St. 1955, c. 702, a statutory bond was not
    required by either G. L. c. 149, § 29, or c. 30, § 39, in connection with
    a contract made by the Massachusetts Turnpike Authority for con-
    struction of its turnpike.   [636–637]
The Massachusetts Turnpike Authority is a separate entity from the
    Commonwealth and turnpike construction contracts made by the
    Authority were not made "in behalf of" the Commonwealth within
    G. L. c. 30, § 39.   [637]
A common law "payment bond," taken by the Massachusetts Turnpike
    Authority before the effective date of St. 1955, c. 702, from the general
    contractor under a contract with the Authority for construction of its
    turnpike, and naming solely the Authority as obligee without pro-
    vision for any other beneficiary, conferred no rights or benefits upon
    one who supplied to a subcontractor materials used in the construction,
    although the bond was conditioned on "payment to all persons supply-
    ing . . . material in the prosecution of" the construction and the
    supplier "knew of and relied upon" the bond.   [637–638]
The turnpike of the Massachusetts Turnpike Authority was not con-
    structed on "privately owned land" within G. L. c. 149, § 29A, and
    no rights or benefits under a bond, taken by the Authority from the
    general contractor under a contract with it for construction of the turn-
    pike and conditioned upon "payment to all persons supplying . . .
    material in the prosecution of" the construction, were given by § 29A
    to one who supplied to a subcontractor materials used in the con-
    struction.   [638–639]

BILL IN EQUITY, filed in the Superior Court on January 2,
1957.

Demurrers to the bill were sustained by *Macaulay,* J., and
*Meagher,* J.   A final decree was entered by *Meagher,* J.,
from which the plaintiff appealed.

*Walter J. Griffin*, for the plaintiff.

*George H. Foley*, for the defendants Orlando and another.

*Jacob J. Spiegel*, for Massachusetts Turnpike Authority.

CUTTER, J.  One Orlando (the prime contractor) made a contract with the Massachusetts Turnpike Authority (the authority) for bridge and highway construction.  Ardini & Pfau, Inc. (the subcontractor), took a subcontract for a part of this work.  The plaintiff, who supplied to the subcontractor materials used in the turnpike work, brings this bill in equity against the authority, the prime contractor, the subcontractor, and Hartford Accident and Indemnity Company (Indemnity) to recover the amount due for the materials and to obtain payment of the amount from a "payment bond"[1] executed on March 31, 1955, by the prime contractor and Indemnity in connection with the contract and on the same day as the execution of a performance bond[2] given by them.  Each bond named only the authority as obligee.

The bill alleged these facts and also (a) that the subcontractor owed the plaintiff $2,363.25 plus interest of $141.80 for the materials; (b) that the prime contractor and Indemnity by the payment bond "made an offer of a unilateral contract to . . . [the plaintiff] to pay for materials . . . used . . . in the construction of the . . . [t]urnpike . . ." and that the "offer was accepted by . . . [the plaintiff] by furnishing" the materials; (c) that the payment bond was "held by the . . . authority in trust for the bene-

---

[1] The relevant parts of the payment bond read:

". . . Anthony J. Orlando . . . as principal, and . . . Indemnity . . . as surety, are . . . bound unto the . . . Authority in the penal sum of . . . $3,340,375.85 . . . to be paid the . . . Authority, for which payment . . . we bind ourselves, . . . jointly and severally . . . ..

"Whereas the principal has entered into a . . . contract . . . with the . . . Authority for [h]ighway and [b]ridge [c]onstruction in . . . Brimfield and Warren.

"Now, therefore, the condition of this obligation is such that if the principal shall promptly make payment to all persons supplying labor . . . or material in the prosecution of the work provided for in said contract . . . then this obligation to be void; otherwise to remain in full force."

[2] The performance bond contained a condition that the prime contractor "shall pay for all labor performed . . . for all materials used . . . in such construction."  The same considerations apply to prevent any recovery by the plaintiff by reason of this bond as in the case of the payment bond.

fit of" the plaintiff and others similarly performing labor and furnishing materials "in reliance" upon the bond; (d) that the plaintiff "knew of and relied upon" the bond; and (e) that on January 25, 1956, the plaintiff filed with the authority a sworn statement of its claim, within sixty days after it last furnished materials. Demurrers were filed by the prime contractor, by Indemnity, and by the authority on the ground, among others, that the bill failed to state any case for equitable relief. The demurrers were sustained. A final decree ordered the subcontractor to pay the amount owed by it and dismissed the bill as against the other defendants. The plaintiff appealed.

1. The payment bond was not a statutory bond. General Laws c. 149, § 29 (as amended through St. 1938, c. 361), was in effect on March 31, 1955. Although § 29 was amended by St. 1955, c. 702, § 2,[3] so that thereafter a statutory payment bond would have been required, in connection with contracts with the authority, for the benefit of persons in the position of the plaintiff,[4] this amendment did not become effective until after the execution of the bond here under consideration. No such bond was required by § 29 prior to the 1955 amendment, for certainly the authority was not a "county, city or town."

Similarly no such bond was then required by G. L. c. 30, § 39, which was amended by St. 1955, c. 702, § 1, in respects

---

[3] See later amendment by St. 1957, c. 682, § 1.

[4] Section 29, as amended by St. 1955, c. 702, § 2, provided in part: "Officers or agents [who contract] *contracting* in behalf of any county, city, [or] town, *district or other political subdivision of the commonwealth or other public instrumentality* for the construction . . . of . . . public works shall obtain sufficient security, by bond [or otherwise], for payment by the contractor and subcontractors for labor performed . . . and materials used . . . in such construction . . . ." The words in brackets were in § 29 as it read before the amendment and were omitted by the amendment. The words italicized were added by the amendment. Statute 1955, c. 702, § 3, provided that § 2 should apply only to contracts executed after the effective date (November 21, 1955) of the amendment, and that contracts "executed prior to the effective date" of the amendment "shall be subject to the provisions" of G. L. c. 30, § 39, and c. 149, § 29, "as in effect immediately prior to said effective date." This latter provision of § 3 indicates that § 2 was not intended to be declaratory of the existing law. It would appear that the Legislature theretofore simply had failed to make § 29 applicable to bodies like this authority although § 29 had been made applicable to housing authorities. See G. L. c. 121, § 26V (inserted by St. 1946, c. 574, § 1); *Philip Carey Mfg. Co.* v. *Peerless Cas. Co.* 330 Mass. 319, 321.

not here material, for § 39 required a bond only from officers
"or agents contracting in behalf of the commonwealth for
the construction . . . of . . . public works."[5]   The au-
thority, although a "public instrumentality" performing
"an essential governmental function" (see St. 1952, c. 354,
§ 3), is not the Commonwealth itself.   See *Opinion of the
Justices*, 334 Mass. 721, 734.   Contracts of the authority
are not made "in behalf of the commonwealth" in the
sense in which that term is used in § 39, which we interpret
as meaning contracts upon which the Commonwealth
itself is directly liable in some manner.   See *Duteau* v.
*Salvucci*, 330 Mass. 531, 537.   Under St. 1952, c. 354, § 2
(see also § 3), expenses of the authority "shall be payable
solely from funds provided under the authority" of c. 354,
and these funds are to be obtained from toll revenues and
revenue bonds upon which (§ 3) the Commonwealth is not
to be liable.

2. The payment bond took effect only as a common law
bond.   *Johnson-Foster Co.* v. *D'Amore Constr. Co.* 314 Mass.
416, 419–420.   See *Robinson Clay Prod. Co.* v. *Beacon
Constr. Co. of Mass. Inc.*, *ante*, 406, 409.   The bond, how-
ever, does not contain any provision, like that considered
in the two cases just cited, showing that the bond was
given for the benefit of all persons furnishing labor and ma-
terials on account of the prime contract.   The *Johnson-
Foster Co.* case, *supra*, at pp. 420–422, allowed suppliers to
enforce in equity the "Obligations of the makers of the bond
springing into existence after the original delivery of the
bond."   These obligations arose by the acceptance by the
suppliers of "the offer of a unilaterial contract" contained
in the bond, in reliance upon the offer and the bond.   See
Corbin, Contracts, § 826, esp. n. 6.   Here there is no offer
in the bond in terms, comparable to the provision relied on
in the *Johnson-Foster Co.* case, running to suppliers of labor
and material, unless it can be implied from the fact that the
usual purpose of a payment bond is to assure the payment of

---

[5] Section 39 was repealed by St. 1957, c. 682, § 2.

such suppliers, particularly where, in the case of public works, there is a broad area of freedom, for the property involved, from statutory mechanics' and suppliers' liens. See G. L. c. 254, §§ 1, 4; *Lessard* v. *Revere*, 171 Mass. 294, 295; *Massachusetts Gas & Elec. Light Supply Co.* v. *Rugo Constr. Co. Inc.* 321 Mass. 20, 22–23. In the light of the Massachusetts precedents, we think that we should not imply an obligation or offer by the makers of the bond to suppliers merely (a) because it may be difficult to see any purpose of taking the bond if no such obligation was intended, or (b) because in the case of a precisely similar bond required by the Commonwealth, a county, a city, or a town, such an obligation would be imposed under the applicable statute. The decisions in Massachusetts have interpreted the range of obligees and beneficiaries of such bonds narrowly, except where, as in the *Johnson-Foster Co.* case, 314 Mass. 416, *supra,* there is shown a specific intention to benefit suppliers or to make an offer to them. Unless suppliers have been given benefits under the bond by statute (see e.g. *A. L. Smith Iron Works* v. *Maryland Cas. Co.* 275 Mass. 74, 76; Williston, Contracts [Rev. ed.] § 367, p. 1072, but see § 372) suppliers, not within a class of beneficiaries mentioned in the bond, have been held to have no enforceable rights under it. See e.g. *Central Supply Co.* v. *United States Fid. & Guar. Co.* 273 Mass. 139, 142–145. Even rights created by statute have been held to be available only to those classes of suppliers specifically mentioned as beneficiaries of the bond in the statute. See e.g. *Claycraft Co.* v. *John Bowen Co.* 287 Mass. 255, 257.

If the parties had intended to create rights in the suppliers, it would have been natural for them to say so in essentially the language considered in the *Johnson-Foster Co.* case, 314 Mass. 416, *supra.* We interpret the payment bond as intended to confer no enforceable benefit upon suppliers. Accordingly, there is no merit to the plaintiff's suggestion that the bond was designed to make the authority trustee of the bond for the benefit of all suppliers.

3. General Laws c. 149, § 29A, inserted by St. 1949, c. 185,

gives to the plaintiff no direct right of recovery upon the bond. That section purports to give suppliers such direct rights where a surety bond is "given in connection with any written contract for the erection . . . of any . . . structure upon privately owned land" if the bond contains "a condition for the payment of all labor and material used." The land of the authority is held for public use and cannot aptly be described as "privately owned land." See *Opinion of the Justices*, 334 Mass. 721, 734.

4. The interlocutory decrees sustaining the demurrers and the final decree are affirmed.

*So ordered.*