HARRY GORDON *vs.* ROBINSON HOMES, INC. & another.

Suffolk.   April 4, 1961. — May 2, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Bond,* Subdivision control bond, Parties. *Subdivision Control.*

The declaration in G. L. c. 41, § 81M, of the purpose for which the subdivision control law was enacted indicates that it was designed primarily to benefit the inhabitants of cities and towns generally, and purchasers of lots in subdivisions only secondarily.   [531]

In a subdivision control bond given under G. L. c. 41, § 81U, as in effect in 1956, running to a city to secure performance by the obligor of an agreement with it "to make certain improvements to land . . . in accordance with definitive plans and specifications for a subdivision of land submitted to and approved by the planning board" of the city, a

provision that the bond was "made for the use and benefit of all persons . . . who may hereafter purchase lots upon any of said plans, and they and each of them are hereby made obligees hereunder, . . . and they and/or each of them may proceed or sue hereon" was inconsistent with the paramount purpose of the law to place in the hands of the planning board its administration for the benefit of the community as a whole, including enforcement of such a bond; and one who purchased lots in the subdivision in reliance upon the bond was not entitled, upon breach of the obligations of the bond to the purchaser's substantial damage, to maintain an action on the bond as a statutory bond or as a common law obligation.  [531, 532–533]

CONTRACT.  Writ in the Superior Court dated December 2, 1959.

The action was heard by *Murray,* J., on demurrer.

*John W. Blakeney,* for the plaintiff.

*Bertram Glovsky,* for the defendants.

SPALDING, J.  This is an action of contract on a bond executed by the defendant Robinson Homes, Inc. (Robinson), as principal and the defendant American Surety Company (American) as surety.  From an order sustaining the defendants' demurrer the plaintiff appealed.

The averments of the declaration in substance are as follows: On April 25, 1956, Robinson as principal and American as surety executed and delivered to the city of Beverly a bond in the penal sum of $35,000 "conditioned upon the performance by . . . [Robinson] of an agreement with the city . . . to make certain improvements to land . . . in accordance with definitive plans and specifications for a subdivision of land submitted to and approved by the planning board of said city."  The bond, although running to the city, also provided that it was "made for the use and benefit of all persons . . . who may hereafter purchase lots upon any of said plans, and they and each of them are hereby made obligees hereunder, . . . and they and/or each of them may proceed or sue hereon."  Relying on the bond, the plaintiff purchased several lots in the subdivision. Robinson, however, "did not faithfully perform all of the terms and conditions imposed by the planning board." Thus the obligations of the bond were not fulfilled and the plaintiff has sustained substantial damage.

Gordon *v.* Robinson Homes, Inc.

One ground of demurrer was that "in so far as . . . [the] bond purports to confer the benefits thereon to persons other than the . . . city of Beverly . . . [it] is unenforceable . . . [since] the city . . . exceeded its statutory authority" under G. L. c. 41. The demurrer was rightly sustained on this ground.

At the time the bond was delivered the relevant portions of G. L. c. 41, § 81U (inserted by St. 1953, c. 674, § 7), provided that "Before approval of a [subdivision] plan by a planning board it may require provision for the construction of ways and the installation of municipal services in accordance with its rules and regulations, and may specify the time within which such construction and installation shall be completed, *with proper bond,* or, at the election of the applicant, the deposit of money or negotiable securities, sufficient, in the opinion of the board, to secure performance" (emphasis supplied). The statute does not define or explain the words "proper bond"; nor does it make any further reference to the provisions for security. Although there are no express provisions with respect to enforcement of the bond in § 81U, an examination of the statutory pattern shows that private enforcement of the bond by one in the position of the plaintiff is inconsistent with the general purpose of the law as well as with the powers given the planning board.

In G. L. c. 41, § 81M, it is declared that the "subdivision control law . . . [was] enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns . . . by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions." The law is thus designed primarily to benefit the inhabitants of cities and towns generally and those who purchase lots in developments only secondarily. By § 81U the planning boards were empowered to "approve, modify and approve, or disapprove" plans, to require the construction of ways and the installation of municipal services, and

to specify the time within which this work should be completed. Upon completion of this work, the boards were required to issue certificates of performance which may be recorded. This, we think, manifests a legislative intent that the planning boards were to have the primary responsibility for administering the subdivision control law and thus safeguard the declared paramount interests of the community as a whole.

Our belief in the correctness of this interpretation is confirmed by subsequent amendments to § 81U which indicate the type of enforcement that was originally intended. See *Lubell* v. *First Natl. Stores, Inc. ante,* 161, 165. By c. 377, § 1, of St. 1958, § 81U was replaced by a new § 81U. The provision for a "proper bond" was reënacted in substantially the same form.[1] But an express provision was made for the planning board to release the interest of the town in the bond when the board has determined that the work has been completed. And there is the further provision that "upon failure of the performance for which any such bond or deposit was given" the board, for the benefit of the city or town, may enforce the bond "to the extent of the reasonable cost to such city or town" of completing the unfinished work. Under § 2 of St. 1958, c. 377, the provisions of § 1 (the new § 81U) "with reference to the release of the interest of a town in a bond, the termination of the obligations under a bond and the return of a bond or deposit . . . shall apply to all definitive plans whether filed *before or after* the effective date of this act"; all other provisions of the act were to apply to plans filed after the effective date (emphasis supplied). These retroactive provisions evince a legislative intent that matters relating to the bond (its enforcement and the release of the town's interest in it) were to be in the centralized hands of the city or town. See *Stoneham* v. *Savelo,* 341 Mass. 456.

---

[1] A third alternative was added, which enabled the applicant to provide security "[b]y a covenant, executed and duly recorded by the owner of record, running with the land, whereby such ways and services shall be provided to serve any lot before such lot may be built upon or conveyed . . . ."

Gordon *v.* Robinson Homes, Inc.

The plaintiff, while conceding that the bond here was given pursuant to statutory authority, contends, however, that it was not exclusively a statutory bond and can be enforced as a common law obligation. In support of this position he cites *Johnson-Foster Co.* v. *D'Amore Constr. Co.* 314 Mass. 416. There the bond was not effective as a statutory bond under G. L. c. 149, § 29, as appearing in St. 1938, c. 361, because the housing authority to whom it was given was not one of the governmental bodies enumerated in the statute. The bond, therefore, was not enforceable as a statutory bond and the principal question was whether subcontractors and materialmen could enforce the instrument as a common law obligation, and it was held that they could in view of certain provisions in the bond. See also *Waite Hardware Co.* v. *Ardini & Pfau, Inc.* 339 Mass. 634, 637–638. Although common law as well as statutory recovery was allowed in *Robinson Clay Prod. Co.* v. *Beacon Constr. Co. of Mass. Inc.* 339 Mass. 406, 409–410, that decision rested on a holding of the New Hampshire Supreme Court that the New Hampshire statute in question did "not prohibit the incorporation of additional conditions." Compare *Metropolitan Pipe & Supply Co.* v. *D'Amore Constr. Co.* 309 Mass. 380; *Philip Carey Mfg. Co.* v. *Peerless Cas. Co.* 330 Mass. 319, 321–322. We do not decide that there cannot be situations where common law obligations may be included in a statutory bond.

Assuming that the provision for enforcement by the purchasers of the lots met the requirements of a common law obligation we think that it ought not to be treated as such. If the nonstatutory provisions permitting actions by the individual purchasers were enforced the statutory objectives, discussed above, would be thwarted. The possible rights of lot owners to require the enforcement of this bond are not in issue.

*Order sustaining demurrer affirmed.*