MORSE BROS. ELECTRICAL CO., INC. *vs.* THE MARTIN SHORE REALTY CO., INC.

Worcester. March 7, 1962. — April 4, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract,* Building contract. *Bond,* Construction contract bond, Parties.

A provision in general instructions addressed by a landowner primarily to the bidders for the general contract for building construction on the land, that the successful bidder must furnish a bond for performance of the contract and "payment of all obligations therefrom," was controlled by a provision of the "General Conditions" of the contract that a bond would be required for performance thereof and "payment of all obligations arising thereunder in such a form as the owner may prescribe." [83]

In a building construction contract with a landowner containing "General Conditions" which were to govern the work of the electrical subcon-

tractor, a provision of the "General Conditions" requiring the general contractor to furnish the owner a bond for performance of the contract and "payment of all obligations arising thereunder in such a form as the owner may prescribe" disclosed no intention or agreement on the part of the owner to require a bond in such terms as to benefit the subcontractor by giving him direct rights thereon; and no breach of any contractual obligation of the owner to the subcontractor was shown by the owner's taking a bond not so benefiting the subcontractor.  [84–85]

CONTRACT.  Writ in the Superior Court dated December 11, 1959.

The action was heard on an agreed statement of facts by *Taveira, J.,* who ordered judgment for the defendant.  The plaintiff appealed.

*Harry Zarrow,* for the plaintiff.

*Henry R. Sher,* for the defendant.

CUTTER, J.  The defendant (Realty) owns real estate in Worcester.  On July 7, 1958, Realty issued a written invitation for bids for a proposed addition to a building on this land.  In its instructions to bidders, it stated (par. 8), "The successful bidder shall furnish a [g]uarantee [b]ond in the full amount of the contract . . . which shall cover the faithful performance of the contract, and the payment of all obligations therefrom."  Under the title "General Conditions (Supplementary) . . . 4. Guaranty Bond," the specifications provided that the owner would "require the [c]ontractor to furnish bond of the amount of contract price, covering faithful performance of the [c]ontract, and the payment of all obligations arising thereunder *in such a form as the [o]wner may prescribe* and with such securities as he may approve" (emphasis supplied).  The bid form provided for the inclusion by the general contractor of subbids, in the sense that the names of subcontractors were to be listed by subjects, but, apparently, without itemization of the amount of any subbids.  "Division 'E' — Electrical Work" of this document provided that the "[c]ontract [t]erms and [g]eneral [c]onditions . . . shall govern the requirements of this [d]ivision."

The plaintiff (Morse) was the successful subbidder on the electrical work.  Morse entered into a subcontract with

344 Mass. 81                                                    83

Morse Bros. Electrical Co. Inc. *v.* Martin Shore Realty Co. Inc.

the general contractor, Alton Builders, Inc. (Alton), which had made a contract with Realty "in accordance with the provisions of the invitation for bids."

Alton furnished a bond, by the condition of which the bond was to be void "if . . . [Alton] shall indemnify . . . [Realty] against any loss or damage directly arising by reason of the failure of . . . [Alton] to . . . perform said contract, and shall cause *all lien claims* for labor and materials furnished in the prosecution of the work thereunder to be discharged" (emphasis supplied).

Morse performed the work under the electrical subcontract. A balance due it of $5,484.45 has never been paid. Alton became insolvent on April 22, 1959, and subsequently was adjudged a bankrupt. Morse knew that the invitation for bids "provided for a performance bond . . . but did not know . . . the terms and conditions of the bond . . . although it relied upon the existence of a performance bond in making its bid . . . and entering into" the subcontract. Morse did not speak with Realty before making its subcontract and Realty made no representations to Morse with respect to the bond. Morse never filed or perfected a lien and, when it learned the terms of the bond, it was too late to do so.

In this action by Morse against Realty for alleged breach of contract by Realty to require a guaranty bond from Alton, the foregoing facts were agreed. A judge of the Superior Court ordered judgment for Realty. Morse appealed.

1. Paragraph 8 of the instructions to bidders is only general, summary instruction addressed primarily to bidders for the general contract. There is no specific indication that this paragraph was to govern subcontractors in their subbids. The paragraph is controlled by the more specific conditions of par. 4 of the "General Conditions (Supplementary)." Paragraph 4 provides that the performance bond is to cover "the payment of all obligations" arising under the contract "in such a form as . . . [Realty] may prescribe."

2. This court has held that a bond, given in connection with a construction contract, which is "valid as the basis of a common law obligation," may operate to benefit "all parties who, in reliance upon it, have furnished material or labor," if the bond contains certain "peculiar terms." *Johnson-Foster Co.* v. *D'Amore Constr. Co.* 314 Mass. 416, 419–420. In that case (p. 420), the bond expressly stated, not only that it created an obligation to the entity for which the work was being done, but that it was "also made for the use and benefit of all persons . . . who may furnish any material or perform any labor for . . . [the] contract . . . and they and each of them are . . . made obligees hereunder . . . and . . . may . . . sue hereon." The decision (p. 422), that suppliers could recover unpaid balances from the surety on the bond, "proceeds upon the theory that *because of the wording of the bond* . . . there was a direct contractual relation between the plaintiffs and the surety" (emphasis supplied). The principle of this case has been reaffirmed in cases where (a) the provisions of the bond or other contractual arrangement show an intention to benefit subcontractors and suppliers and to give them a direct right upon the bond or contract, and (b) there has been reliance by the subcontractors and suppliers. See *Robinson Clay Prod. Co.* v. *Beacon Constr. Co. of Mass. Inc.* 339 Mass. 406, 408–410; *Waite Hardware Co.* v. *Ardini & Pfau, Inc.* 339 Mass. 634, 637–638 (where, however, a particular bond was interpreted as conferring "no enforceable benefit upon suppliers"). See also *Frigidaire Sales Corp.* v. *Maguire Homes, Inc.* 186 F. Supp. 767, 768–769 (D. Mass.), affd. sub nom. *American Sur. Co.* v. *United States,* 282 F. 2d 427, 428 (1st Cir.). We need not consider whether the per curiam opinion on appeal in that case states too broadly the direct rights of a supplier upon a bond under Massachusetts law. Cf. *Philip Carey Mfg. Co.* v. *Peerless Cas. Co.* 330 Mass. 319, 322; *Gordon* v. *Robinson Homes, Inc.* 342 Mass. 529, 533.

The Massachusetts decisions thus have recognized direct rights of subcontractors and suppliers against the surety on bonds only where "there is shown a specific intention to

benefit suppliers or to make an offer to them." See the *Waite Hardware Co.* case, 339 Mass. 634, 638. See also Williston, Contracts (3d ed.) § 372, pp. 916–917; Corbin, Contracts, §§ 798–801, esp. p. 171. We find in par. 4 of the "General Conditions (Supplementary)" no sufficient indication of intention to benefit suppliers and subcontractors by the bond to be furnished by the prime contractor. The provision that the bond is to be "in such a form as the [o]wner may prescribe" leaves the extent of protection to Realty's discretion. Realty, under such a provision, could limit the scope of the bond to those matters which it might feel that it needed for its own protection. Realty had no direct contractual relations with subcontractors and suppliers, even though the subcontractors might be bound by the general conditions in some circumstances. Cf. *Farm-Rite Implement Co.* v. *Fenestra, Inc.* 342 Mass. 427, 431. There is no indication that suppliers and subcontractors were to have any direct rights against the surety on the bond, or any direct contractual rights against Realty; nor is there any adequate basis for holding that Realty was offering to them the protection of such a bond. Upon the case stated, we conclude as did the trial judge, that there has been no breach of any contract by Realty to obtain such a bond.

*Order for judgment affirmed.*