JOHN T. BERRIAULT & others *vs.* WAREHAM FIRE
DISTRICT & others.

Plymouth.     September 16, 1971. — October 20, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Taxation,* Betterment, Assessment for the cost of laying waterpipes.
*Wareham Fire District. Statute,* Validating statute.

Acceptance by vote by the Wareham Fire District of the provisions of
    G. L. c. 40, §§ 42G–42I, and subsequent adoption by the board of
    water commissioners in the district of an. order relating to an
    extension of its water distributing system into a certain new area
    and estimating the cost of the extension and indicating the
    landowners liable to betterment assessments therefor, which was
    followed by recording of the order in the registry of deeds, was
    ineffective to impose valid liens under § 42I on the parcels of such
    landowners where it appeared that the cost of laying water pipes
    had been incurred and the extension had been completed before the
    district accepted §§ 42G–42I. [164–165]
St. 1969, c. 407, § 1, purporting to authorize the Wareham Fire District
  .  to "levy and collect assessments for betterments comprising water
    extension programs" for the years 1967 and 1968, "[n]otwith-
    standing the failure of the . . . district to comply with the
    provisions" of §§ 1 and 2 of c. 80 and § 42I of c. 40 of the General
    Laws, did not use apt language to cure defects in the district's
    action under G. L. c. 40, §§ 42G and 42H with respect to a water
    main extension project for such years which was already completed
    before the district voted to accept c. 40 §§ 42G–42I in 1968.
    [165–166]
G. L. c. 80, § 1, provided no authority upon which the water
    commissioners in the Wareham Fire District could validly base an
    order relating to an extension of the water distributing system into
    a certain new area and estimating the cost of the extension and
    indicating the landowners liable to betterment assessments there-
    for, which was followed by recording of the order in the registry of
    deeds, where it appeared that the extension was not made "in
    accordance with" the order but was made pursuant to earlier votes
    of the district itself. [166–169]

BILL IN EQUITY filed in the Superior Court on December
27, 1968.

The suit was heard by *Smith,* J.

Berriault *v.* Wareham Fire District.

*John J. Ryan* (*Edward G. Griffin* with him) for the plaintiffs.

*Robert Clayton* (*Robert D. Kiernan* with him) for the defendants.

CUTTER, J.   Upon this bill for declaratory relief the following facts were established by the pleadings or justifiably found by the trial judge.   The plaintiffs own land in the "West Wareham annexation" of the Wareham Fire District (the district).   See St. 1907, c. 178 (fn. 2, *infra*).   West Wareham was added to the district by vote of the district at its 1966 annual meeting.   At the annual district meeting held on March 11, 1968, the district accepted G. L. c. 40, §§ 42G–42I.[1]

[1] The capital letters in brackets in the following quotations and in fn. 2, are for convenient reference to the language immediately following such letters respectively.   All emphasis is supplied in these quotations.   Section 42G (as amended through St. 1957, c. 268, § 1) reads in part: "Any city, town or district having a . . . water distributing system which . . . accepts this section and the two following sections . . . in towns or districts by vote of its inhabitants at an annual town or district meeting called therefor, [A] may provide by . . . *by-law or vote* for the levy of special assessments to meet the whole or part of the cost *thereafter* incurred of laying pipes in public and private ways for the . . . distribution of water . . . . [B] *Such . . . district* may provide that an owner of land which receives benefit [as specifically provided in the section] from the laying of water pipes in public and private ways . . . shall pay a proportionate part of the cost not already assessed of extending such water supply to his land.   The amount to be charged against each parcel of land . . . shall be ascertained, assessed and certified by the water commissioners . . . in charge of the . . . distribution of water in such city, town or district."   Section 42H (inserted by St. 1955, c. 332) reads in part: "A . . . district having a . . . water distributing system may provide that assessment for the cost of providing and laying water pipes *thereafter* in public and private ways shall be made upon the several parcels of land receiving benefit . . . by a fixed uniform rate based upon the estimated average cost of all the water pipes therein and the laying thereof, according to the frontage of such land on any way in which a water pipe is laid . . . ."   Section 42I (as amended through St. 1955, c. 639) reads in part: "Whenever the water commissioners . . . in a . . . district which has accepted sections . . . [42G to 42I], *determine to lay water pipes* in public and private ways and [C] assessments may be made under said sections for the construction of such improvement, they shall forthwith cause to be recorded in the registry of deeds . . . a statement of their action, which shall specify the ways in which such water pipes are to be laid and shall describe such land as does not abut upon any such way which is to be assessed for such improvement, and which shall designate as the owner of each parcel upon which a lien is to be imposed by this section the person who was liable to assessment therefor on the preceding January first under . . . [c. 59].   All [such] assessments imposed . . . upon any land . . . shall constitute a lien upon such land from the time such statement is recorded.   [D] The provisions of . . . [c. 80] relative to the apportionment, division, reassessment, abatement and collection of assessments, and to interest, shall apply to assessments under this chapter.   No assessment shall be levied . . . in excess of the benefit to the land assessed from the laying of the water pipes for which the assessment is levied . . . ."

In 1967, the district engaged engineers to prepare plans for supplying water to the West Wareham annexation and later made appropriations, to be paid for by borrowings, for acquiring land for, and constructing, a standpipe and for laying mains. The water commissioners [2] were "authorized to take all action necessary to carry out these projects." The work began in July, 1967, and was completed about February 1, 1968.

On July 2, 1968, the water commissioners adopted an order, relating to the completed extension of the system to West Wareham, in part as follows: "That the [district's] water system . . . be extended . . . over certain streets and ways which are located within the . . . [d]istrict . . . that by reason thereof the area . . . along and about said streets and ways will receive a benefit or advantage other than the general advantage to the community known as the . . . [d]istrict, and that the betterments are to be assessed in the amounts respectively estimated below. . . . The estimated cost of the improvement is $299,251.53. On the attached sheets the persons liable to assessment . . . the locations of the parcels to be assessed . . . and the estimated amounts of the assessments are listed." Notice of the order was recorded in the Plymouth County registry of deeds on July 25, 1968, and amended lists were recorded on October 11, 1968. About September 20, 1968, the assessors of Wareham notified each landowner in the West

---

[2] The district was created by St. 1907, c. 178. Section 10 of that statute provides in part: "Said . . . [d]istrict shall, after its acceptance of this act at a legal meeting . . . elect by ballot three persons . . . to constitute a board of water commissioners, and at each annual meeting thereafter one such commissioner shall be elected by ballot for the term of three years. [E] *All the authority granted to said district by this act and not otherwise specifically provided for shall be vested in said board of water commissioners,* who shall be subject however to such instructions, rules and regulations as said district may impose by its vote. . . ." (emphasis supplied). In certain matters, it is expressly provided in c. 178 that the district must act at a legal meeting, e.g. under § 6 in issuing bonds, and under § 7 in raising by taxation sums to enlarge or extend its works. The district (by § 7) is directed to "raise by taxation annually a sum which with the income derived from the sale of water will be sufficient to pay the current annual expenses of operating . . . and the interest accruing on the [district's] bonds . . . [and] debt . . . together with such payments on the principal as may be required under the provisions of this act."

Wareham annexation of the amounts of the betterment assessments and of their right to request apportionment.[3] About October 15, 1968, the tax collector mailed a bill to each such landowner.

The plaintiffs, by their bill filed December 27, 1968, sought declaratory relief concerning the validity of the assessments, and whether valid liens thereby were imposed on their properties.[4] After the bill was brought, St. 1969, c. 407, was enacted by the Legislature [5] and approved on June 10, 1969.

On July 28, 1969, the trial judge ruled that the betterment assessments and liens would become valid when St. 1969, c. 407, became effective.[6] From a final decree to

---

[3] Statute 1907, c. 178, § 8, provides that when a tax "is duly voted by . . . [the] district . . . the clerk shall send a certified copy of the vote to the assessors of . . . Wareham, who shall . . . assess the same in the same manner in which town taxes are required by law to be assessed. The assessment shall be committed to the town collector, who shall collect said tax in the manner and at the time provided for the collecting of town taxes . . . ."

[4] The grounds of invalidity which the plaintiffs assert in their bill, are "[1] that there is no [district] vote . . . providing for the levy of special assessments, [2] that special assessments can only be levied to meet the cost thereafter incurred of laying pipes, [3] that [provision for] assessment . . . [at] a fixed uniform . . . [rate] based upon the estimated average cost of all the water pipes and the laying thereof, according to the frontage of such land on any way in which a water pipe is laid can only be applicable to pipes provided and laid thereafter, and [4] that when the . . . [c]ommissioners decided to lay water pipes in the West Wareham annexation they should have forthwith caused to be recorded . . . the statement required" by G. L. c. 40, § 42I. In their brief the plaintiffs also assert that St. 1969, c. 407 (see fn. 5), was not validly enacted under art. 89 of the Amendments to the Constitution of the Commonwealth.

[5] Examination of the original petition for the legislation (1969 House Bill No. 1427) shows that it was introduced by Representative Charles A. MacKenzie of Wareham for the Board of Water Commissioners, Wareham Fire District (Chris Sempor, Gilbert C. Phinney, and Charles N. Decas, all of whom are defendants). Chapter 407, as enacted, was entitled, "An Act extending the time during which the Wareham fire district may levy assessments for the cost of certain betterments," and reads as follows: "Section 1. Notwithstanding the failure of the Wareham fire district to comply with the provisions of . . . [§§ 1 and 2 of c. 80 and § 42I of c. 40] of the General Laws, said district may levy and collect assessments for betterments comprising water extension programs for the years . . . [1967 and 1968]. Section 2. The recording by the Wareham fire district of the orders, plans, estimates and assessments required under the provisions of . . . [§§ 1 and 2 of c. 80 and § 42I of c. 40] of the General Laws is hereby validated and confirmed, notwithstanding the failure of said district to record the same within the time prescribed by said sections."

[6] The final decree appears to be based upon the assumption that c. 407 would become effective ninety days after its approval. Chapter 407, however,

this effect, the plaintiffs appeal. There was no request for a report of material facts. The evidence is reported.

1. The work, the cost of which is the subject of the betterment assessments, was completed about February 1, 1968. The provisions of G. L. c. 40, §§ 42G–42I, were not accepted (see *Brucato* v. *Lawrence,* 338 Mass. 612, 614–615) by the district until March 11, 1968. There is no allegation, finding, or evidence that the district thereafter "provide[d] by" (see § 42G, *supra,* fn. 1, at point [A]) any "by-law or vote for the levy of special assessments to meet . . . the cost *thereafter* incurred of laying pipes in public and private ways" (emphasis supplied) as authorized by § 42G, or that any vote to "provide" (see § 42G, fn. 1, *supra,* at point [B]) for use of the procedures set forth in § 42H was adopted after the district accepted that section on March 11, 1968.[7] No order for imposing betterment assessments for the project appears to have been promulgated either by the district or by the water commissioners until the latter, on July 2, 1968, adopted the order, already quoted, and recorded it.

This order related to a project already completed, so the order was not made at the time when the commissioners "determine[d] to lay water pipes," as required by the first sentence of § 42I. Because § 42G (and probably also § 42H, and [by reference to § 42G] § 42I) related only to "cost thereafter incurred," the situation was not, on July 2, 1968, one where "assessments may be made under said sections for the construction of such improvement" (see § 42I, fn. 1, *supra,* at point [C]). Also the recording (on July 23, 1968) of the order of July 2, 1968, may not satisfy the re-

---

is "restricted to" a particular district of the Commonwealth and thus was not subject to a referendum petition. See *Opinion of the Justices,* 261 Mass. 523, 554. See.art. 48 of the Amendments to the Constitution of the Commonwealth, The Referendum, I and III, § 2, and G. L. (Ter. Ed.) c. 4, § 1. Chapter 407 did not state when it was to take effect, so it became effective thirty days after June 11, 1969. See *Kagan* v. *United Vacuum Appliance Corp.* 357 Mass. 680, 682.

[7] The district's assessments appear to have been made at a rate of $3 a frontage foot. Thus, the commissioners apparently proceeded as if § 42H were applicable.

quirement of § 42I that it be recorded "forthwith." There may also have been failure to comply with the procedural requirements of G. L. c. 80, § 1 (as amended through St. 1933, c. 254, § 62) and § 2 (as amended through St. 1962, c. 234). See *Union St. Ry.* v. *Mayor of New Bedford,* 253 Mass. 304, 312–313. These procedural requirements, so far as they related to apportionment, division, reassessment, abatement, collection, and interest, were incorporated by reference by c. 40, § 42I (see fn. 1, *supra,* at point [D]). These delays and failures doubtless led the commissioners (see fn. 5) to seek the 1969 legislation (c. 407).

2. Before the 1969 statute became effective, the district had not effectively acted under c. 40, §§ 42G–42I, at least in the respects noted above. It thus is necessary to consider whether St. 1969, c. 407, cured these defects. We assume, without deciding, that c. 407, § 2 (fn. 5, *supra*), adequately and specifically validated any lateness in the recording of orders, plans, estimates, and assessments, so far as required under c. 80, §§ 1 and 2, and c. 40, § 42I. Section 1 of the 1969 statute, however, does not use apt language to cure such defects, arising under c. 40, §§ 42G and 42H (neither of which is mentioned in c. 407, § 1), as (a) failure of the district to adopt a vote or by-law providing for levying betterment assessments, (b) failure to "provide" for the methods of assessment discussed in § 42H, and (c) the circumstance that at least §§ 42G and 42H in terms apply only to projects *thereafter* undertaken, and then only if so provided in a district vote (or votes) in addition to and after the vote accepting the section.

A validating, curative statute, which "may affect personal or property rights [here liability of particular land to betterment assessments and liens] . . . should be precise and clear." See *Loriol* v. *Keene,* 343 Mass. 358, 362; *Opinion of the Justices, post,* 894, 898. The meager language of § 1 does not seem to us broad enough to cover the deficiencies in the district's purported actions and its applica-

tion of c. 40, §§ 42G and 42H, to a project already completed when the district accepted these sections.

Because, in any event, c. 407, § 1, does not cure the defects in the district's action under c. 40, §§ 42G and 42H, we need not decide (and intend no suggestion) whether that chapter, applicable only to a fire district wholly within the town of Wareham, was "an act in relation to . . . towns" adopted without compliance with pertinent (but somewhat ambiguous) provisions (especially § 8) of the so called Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth, or whether any such compliance was required. See *Opinions of the Justices*, 356 Mass. 775, 788–791; *Opinion of the Justices*, 357 Mass. 831, 834–835. See also *Marshal House, Inc.* v. *Rent Review & Grievance Bd. of Brookline*, 357 Mass. 709, 719–720; 1967 Senate Doc. No. 1547, pp. 24–36.

3. The district contends that the assessments may be sustained under G. L. c. 80, §§ 1, 2, and that these sections in effect provide an alternative to the provisions of c. 40, §§ 42G–42I. Chapter 40, § 42I (see fn. 1, at point [D]) does incorporate by reference the procedural methods of dealing with betterments contained in c. 80. In this, § 42I is similar to a number of other provisions of the General Laws. See c. 80A, §§ 1, 15 (alternative method of eminent domain); c. 82, § 12 (highways, benefits may be assessed); c. 83, §§ 14, 26, 28 (sewers, drains, and sidewalks); c. 85, § 6 (snow removal); c. 111, § 136 (drainage of wet lands); c. 161, §§ 78–80 (street railway changes). In these instances, the authority for assessing betterments appears to arise elsewhere than in c. 80, § 1, so that c. 80 provides only the procedure for betterment assessments and not the basic authority.

Chapter 80 arises from a codification of betterment statutes (see Preliminary Report of the Commissioners to Consolidate and Arrange the General Laws, p. 220 et seq.) made in 1918 during the compilation of the General Laws. The same report recommended revision of the eminent

domain statutes (see pp. 3–53). Chapter 80, § 1, now reads, in relevant portions, substantially as it did when recommended in 1918: "Whenever a limited and determinable area receives benefit . . . other than the general advantage to the community, from a public improvement *made by or in accordance with the formal vote or order of a board of officers* of the . . . district, *and such order states that betterments are to be assessed for the improvement,* such board shall within six months after the completion of the improvement determine the value of such benefit . . . to the land within such area and assess upon each parcel thereof a proportionate share of the cost of such improvement, and shall include in such cost *all damages awarded therefor under* . . . [c. 79]; but no such assessment shall exceed the amount of such adjudged benefit . . ." (emphasis supplied). The provisions which now constitute G. L. c. 80 obviously are closely related to the suggested revision (in the same report, p. 3 et seq.) of the eminent domain laws. Section 1 of the latter suggested revision is in essentially the form of what is now G. L. c. 79, § 1.[8] These statutes, on their face and in the light of their simultaneous recommendation, strongly suggest that "the formal vote or order" mentioned in c. 80, § 1, has reference principally to an eminent domain taking order under c. 79, § 1 (fn. 8), which must make specific provision whether betterments are to be assessed if the taking is one for which such an assessment is permissible, although other types of votes and orders, initiating or laying out a public improvement, may also be covered. See *Folan* v. *Dedham,* 259 Mass. 347, 348–350.

---

[8] General Laws c. 79, § 1, reads in part (emphasis supplied): "The taking of real estate or of any interest therein by right of eminent domain may be effected in the following manner. A board of officers upon whom authority to take real estate by eminent domain on behalf of any body politic or corporate has been conferred by law, having first complied with all the preliminary requirements prescribed by law, *may adopt an order of taking,* which shall contain a description of the land taken sufficiently accurate for identification, and shall state the interest therein taken and the purpose for which such property is taken, *and·in case such taking is for an improvement for which betterments may be assessed shall state whether betterments are to be assessed therefor. . . .*"

Even if, standing alone, the language of c. 80, § 1, may seem to have broader application, we think that it does not provide an alternative basic authorization for the assessment of betterments, apart from an order or vote for an eminent domain taking or one initiating a public improvement, especially where another statute expressly authorizes the particular betterment assessment.[9] This interpretation of c. 80, § 1, is essentially that given in Nichols, Taxation in Massachusetts (3d ed.) 765–769; see also p. 828.[10]

In any event, even if no eminent domain taking is necessary to permit action under c. 80, § 1, that section provides no authority for the water commissioners' inclusion of betterment assessments in their order of July 2, 1968. The improvement here in issue was not made "in accordance with" that order of July 2, 1968, but pursuant to earlier

---

[9] The legislative history of St. 1955, c. 332 (see 1955 House Bill No. 1917) affords no indication whether the legislation (inserting c. 40, §§ 42G–42I, in the General Laws) was then thought necessary in order to authorize, with respect to water supply projects, any type of betterment assessments. If G. L. c. 80, § 1, had been thought to have had the comprehensive effect for which the district contends, there would have been no occasion for the 1955 legislation.

[10] The author was a close observer of Massachusetts tax and eminent domain legislation in the thirty years prior to the 1938 edition of his book. He said of c. 80, § 1 (at pp. 767–768): "In the first place it established a uniform procedure for the levying of betterment assessments, and superseded the existing procedure in each case whether established by general or by special laws. . . . In the second place it extended the right to levy betterment assessments to every public improvement laid out by a public governmental body whenever a limited . . . area received a special benefit . . . . In this respect it made an important [substantive] change . . . extending the power of levying betterments to all cases in which betterments might be constitutionally levied and dispensing with the necessity of special statutory authority to justify an assessment on any particular class of improvement. It . . . also extended the power of levying betterments which had previously been commonly limited to cities and to such towns as had accepted particular betterment acts, to all towns and counties in every case which might arise.

"It is to be noted, however, that the statute is limited . . . to improvements laid out or established by a formal vote or order and . . . does not include . . . work performed on land already . . . controlled by the public authorities, or work which requires no formal order to establish it. Accordingly, assessments for the establishment of sewers and sidewalks in existing public ways, or for sprinkling streets or for exterminating insect pests are not within the scope of the statute, and the statute does not *ex proprio vigore* extend to such assessments even with respect to its administrative provisions. . . . [M]ost of the statutes which authorize assessments of such a character specifically adopt by reference the administrative provisions contained in" c. 80.

votes of the district itself. We conclude that c. 80, § 1, provides no basis for the assessments here in issue.[11]

4. We have, of course, no occasion to consider what, if any, more adequate, curative legislation could now be devised to sustain these assessments, or to what extent and in what manner such curative legislation must protect persons who may have changed their position with respect to land affected by the order of July 2, 1968, after that date. See *Opinion of the Justices, post,* 894, 897-900.

5. The final decree is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion. If no further relevant legislation is approved prior to April 15, 1972, a new final decree is to be entered declaring the rights of the parties in accordance with this opinion.

*So ordered.*

---

[11] The special legislation (St. 1907, c. 178) authorizing the district does not deal adequately with the question of the water commissioners' powers to impose betterment assessments which are a form of taxation. See *Warren* v. *Street Commrs. of Boston,* 187 Mass. 290, 291–292. The italicized language of c. 178, § 10 (see fn. 2, *supra,* at point [E]) does not, by itself, clearly give to the commissioners the power (without a district vote) to levy betterments, nor is that power expressly mentioned in §§ 6 and 7 of the 1907 statute. On this record we need not decide how these sections relate to district betterment assessments.