ROBERT H. GALLO & others[1] vs. DIVISION
OF WATER POLLUTION CONTROL & others.[2]

Worcester. January 6, 1977. — January 25, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Division of Water Pollution Control. Metropolitan District Commission.
Practice, Civil,* Parties, Declaratory proceeding. *Declaratory Judg-
ment. Taxation,* Sewer assessment. *Administrative Matter.*

Landowners who were not permitted to connect to a local sewerage
system were not "person[s] interested" as used in St. 1932, c. 262, § 12,
or St. 1938, c. 460, § 7, and did not therefore have a right of action
against the Metropolitan District Commission, which was obligated to
maintain or construct the sewerage system [283-286]; nor did they
have standing to bring an action against certain municipalities for
violating their contracts with the Commission to keep their sewerage
systems in good repair [286-287].

A real estate developer could not maintain a suit for declaratory relief
challenging a town's sewer assessment policy after the assessment had
been committed to the tax collector where the plaintiff had not ex-
hausted the administrative remedies provided by G. L. c. 80.
[287-289]

A complaint challenging the constitutionality of an order of the Division
of Water Pollution Control which failed to allege that the Division's
order established or was part of a practice or procedure, that the prac-
tice was the customary method of conducting the Division's business,
that the practice violated the laws or Constitution of the Com-
monwealth or the United States Constitution, and that the violation
had been consistently repeated, did not state a claim against the Divi-
sion within the provisions of G. L. c. 231A. [289-290]

[1] The other plaintiffs are Clealand B. Blair, Stately Homes, Inc., B.A.
Sundin & Son, Inc., and C. B. Blair Builders, Inc.

[2] The other defendants are Metropolitan District Commission, town of
Holden, town of Rutland, and city of Worcester. By St. 1947, c. 583, ef-
fective June 30, 1947, the Metropolitan District Water Supply Commission
was abolished, "and all its functions, rights, powers, duties, obligations
and properties" were transferred to the Metroplitan District Commission.
See generally G. L. c. 92, §§ 10-32. Any reference to the "Commission"
shall be to the appropriate commission, depending on the date involved.

Plaintiffs seeking to challenge an order of the Division of Water Pollution Control that "[n]o extension of or connection to the municipal sewerage system . . . may be made unless authorized by the Division, through the issuance of a sewer extension or connection permit" were precluded from seeking declaratory relief under G. L. c. 231A, where they had not exhausted their administrative remedies under G. L. c. 21, § 43. [290-292]

CIVIL ACTION commenced in the Superior Court on March 10, 1976.

The case was heard by *Lappin*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Phillips S. Davis* for the plaintiffs.

*Robert J. Martin*, Town Counsel, for the town of Holden.

*Charles A. Abdella*, Assistant City Solicitor, for the city of Worcester.

*William A. Schroeder*, Assistant Attorney General, for the Division of Water Pollution Control & another.

QUIRICO, J. The plaintiffs, who are engaged in residential development in the towns of Holden and Rutland, seek injunctive and declaratory relief, as well as damages, for certain acts and omissions of the defendants resulting in the plaintiffs' inability to make sewer connections between their house lots and the municipal sewage disposal system.

The plaintiffs allege that, because they have not been granted authority to connect their lots to the sewer system, they are being deprived of their livelihood and their property without just compensation and without due process of law. Each of the defendants moved to dismiss the complaint on the ground that it failed to state a claim on which relief could be granted, with all defendants except Worcester arguing additionally that the plaintiffs had failed to exhaust their administrative remedies.[3] A judge of the Superior

---

[3] These defendants included in their motions as a further ground for dismissal the absence of an "actual controversy" between the plaintiffs and the defendants. In view of our determination that the allowance of the motions was proper for other reasons, we do not reach this issue. Nor do we reach the issue raised in the towns' motions that the plaintiffs failed

Court allowed the motions to dismiss as to all defendants, and the plaintiffs are appealing therefrom. We affirm the judgments.

We summarize the allegations of fact contained in the lengthy complaint. By letter dated January 6, 1976, the defendant Division of Water Pollution Control (Division), through its director, notified the boards of selectmen of Holden and Rutland that "[n]o extension of or connection to the municipal sewerage system in any gallonage amount or for any purpose may be made unless authorized by the Division, through the issuance of a sewer extension or connection permit." The only exceptions in the directive were: (1) if the board of health certified that the connection was necessary to eliminate "an existing or imminent nuisance or public health problem caused by one or more failed septic systems"; or (2) if evidence was submitted showing that twice the amount of infiltration or inflow to the sewerage system had been removed as was sought to be introduced by the new connection. The director gave as the reason for the order the fact that "sewage flows in the MDC trunk sewer conveying sewage from Holden and Rutland to the Worcester sewerage system are approaching and are within ninety-five percent (95%) of the design capacity of that trunk sewer."

As a result of the Division's directive the plaintiffs have not been able to proceed with the residential development of several parcels of land in Holden and Rutland. For some parcels, subdivision plans have been approved or special permits have been issued, subject only to the connection of the properties to sanitary sewers. As to other parcels, building permits have been refused because the developers had not obtained the sewer connection permits from the Division. The land conditions of most of the parcels are such that installation of individual disposal systems would be very difficult or impossible. Indeed, at least one parcel com-

to allege in their complaint facts sufficient to support their conclusions. This ground adds nothing to the others.

Gallo v. Division of Water Pollution Control.

plies with zoning requirements for property with access to public sewerage, but does not comply with the requirements for property without such access. The defendant towns originally submitted to the Division applications for sewer connection permits on behalf of the plaintiffs, but the Division failed to act on the applications and the towns withdrew most of them.[4]

Additionally, Holden has charged the plaintiff B. A. Sundin & Son, Inc. (Sundin), betterment assessments for two parcels even though Sundin cannot connect the properties to the town's sewerage system. Sundin paid both sewer assessment bills. The assessing policy of Holden does not provide any relief in the event of a moratorium on sewer connections.[5] It is alleged that, notwithstanding the policy and the Division's order, the town has allowed certain sewer connections and has appropriated funds for the construction of additional sewer lines for business properties.

The Rutland-Holden trunk sewer line, the subject of the Division's directive, extends from the center of Rutland through Holden to a point on the boundary between Holden and Worcester. It was built by the Commission pursuant to authority granted in St. 1932, c. 262. The legislation also authorized the Rutland and Holden sewerage systems to be connected to the trunk line and further authorized the Commission to enter into contracts with the two towns and the city of Worcester to carry out the project. In 1933, the Commission and the city of Worcester entered into a con-

[4] It does not appear from the allegations in the complaint that the application submitted by the town of Rutland in behalf of C. B. Blair Builders, Inc., was withdrawn. However, the Division advised the town that no action would be taken on the application until the serious infiltration problem in the town's sewer system was remedied. The town allegedly took no further action.

[5] The town's "Assessment Policy," a copy of which is attached to the complaint, establishes cost rates for sewer assessments, fixes formulas for determining assessments, exempts from assessment overland sewers for which the town has received easements, and provides for appeal to the board of selectmen in "[u]nusual situation[s] for abutting property assessments."

tract which provided in part that the city would build a connecting sewer from the Rutland-Holden trunk line to the city's sewer system and would dispose of the additional sewage at the sewage treatment plant. In 1938, the Commission and Holden and Rutland entered into contracts whereby the Commission agreed to construct sanitary sewerage systems in the towns, and the towns agreed to operate the systems and keep them in good repair. The Commission also agreed to maintain and operate the trunk sewer for the removal of all sewage from the two towns, and the towns promised in turn that, in making connections to the trunk line, they would prevent the entrance of drainage and other materials that would tend to overload the system.

In fact, the plaintiffs claim that the towns have not kept their sewerage systems in good repair and there is infiltration of more than 100,000 gallons a day into each system. The Commission, however, has not attempted to compel the towns to live up to their contractual obligations. Since 1970 the defendants have been aware of the potential sewer capacity problem in the Rutland-Holden trunk line but have done nothing to remedy the situation. State and Federal funds have been available to build an additional line or to seal existing lines in order to provide additional capacity. However, neither the Commission nor the defendant municipalities have applied for these funds. Nor has the Division, through which the funds are available, sought to compel the other defendants to apply for financial assistance or to take other action to remedy the situation.

The plaintiffs contend finally that the Commission's issuance of the moratorium order without a time limit and without a positive remedial program resulted in an unconstitutional taking of the plaintiffs' property, and that Holden's sewer assessment policy is illegal and unconstitutional because it requires the imposition of sewer assessments notwithstanding the sewer moratorium. The plaintiffs pray that the two towns be preliminarily enjoined from any further construction of sewer lines or from allowing any further extensions of or connections to their sewerage

system; that Holden be enjoined from collecting sewer assessments from the plaintiffs and from encumbering such of the plaintiffs' property as is affected by the moratorium until the moratorium is lifted and their connections are allowed; that the court declare that the Commission and the defendant municipalities are in violation of their contracts, and that further violation of these contracts be enjoined. The plaintiffs also seek damages.

The principal issue before us is whether the plaintiffs have standing to maintain this action. They contend that they derive their standing from one or both of the following sources: (1) the special acts authorizing the Commission to build the Rutland-Holden trunk sewer line and to enter into the contracts with the defendant municipalities, and (2) the declaratory judgments act (G.L. c. 231A). We consider these contentions as to each defendant.

1. The plaintiffs' claims against the Commission are based solely on that agency's alleged failure to comply wih the provisions of its contracts with the towns of Holden and Rutland to maintain and operate the trunk sewer for the removal of all sewage from the towns. The plaintiffs argue that their authority to bring the action is derived from certain provisions in the two special acts authorizing the contracts. In the 1932 act the Superior Court is given jurisdiction, "on the petition of the commission or of any city, town, corporation or person interested . . . to enforce the provisions of this act and to prevent any violation thereof, and to enforce the terms of any agreement made [under the act]." St. 1932, c. 262, § 12. A nearly identical provision appears in the 1938 act.[6]

The plaintiffs contend that the phrase "person interested" applies to them although they are not parties to the con-

---

[6] "The supreme judicial court or any justice thereof and the superior court or any justice thereof, on the petition of the commission or of any city, town or person interested, shall have jurisdiction in equity or otherwise to enforce this act and to prevent any violation thereof, and to enforce the terms of any agreement lawfully made hereunder." St. 1938, c. 460, § 7.

tracts. For this contention to be correct, we must attribute
to the Legislature the intent to authorize actions by nonpar-
ty landowners against parties to the contracts, the alleged
breach of which prevented the landowners from connecting
to the municipal sewerage system. To determine whether
this is what the Legislature intended, we look to the
language and purpose of the statutes. See *Westland Hous.
Corp.* v. *Commissioner of Ins.*, 352 Mass. 374, 383-384
(1967); *Godfrey* v. *Building Comm'r of Boston*, 263 Mass.
589, 590-591, 593 (1928); *Ayer* v. *Commissioners on Height
of Bldgs. in Boston*, 242 Mass. 30, 33 (1922). A reading of
each statute as a whole reveals that no such broad construc-
tion was intended.

The 1932 act authorized the Commission to construct the
Rutland-Holden trunk sewer "for the purpose of maintain-
ing and protecting the purity of the water supplied and to
be supplied from the Wachusett reservoir, the Quinapoxet
river and the Ware river to the metropolitan water district
and the city of Worcester and other cities and towns connec-
ted with the water supply systems of said district and city
. . .." St. 1932, c. 262, § 1. The act provided further that
the Commission "is authorized to conduct or divert into said
main sewer or sewers or any branches thereof the sewage
from any sewerage system that may hereafter be construct-
ed by the towns of Rutland and/or Holden, and any sewage,
drainage or pollution of any kind caused by any institution,
factory or person which now finds or may hereafter be in
danger of finding its way directly or indirectly into said
Ware river or its headwaters, or into said Quinapoxet river
or any other stream, pond, reservoir or tributary thereof
connected with or discharging into said Wachusett res-
ervoir." *Id.*

These provisions, prominently placed at the beginning of
the statute, plainly indicate that the purpose of the enact-
ment was to protect the water supply. This purpose is also
announced in the title, "*An Act authorizing the construc-
tion and maintenance of a sewerage system or systems for
the purpose of maintaining and protecting the purity of*

*the water supplies from the Ware river and Wachusett watersheds."* The express statements of purpose demonstrate that the primary reason for authorizing construction of the trunk sewer line was not to confer on the landowners the benefit of a sewerage system to which they could connect their properties, but rather to establish a sewerage system that would divert sewage, drainage, and pollution from the water supply system.

None of the provisions in the other eleven sections of the 1932 act evidences any intent to create in landowners the right to enforce the agreements made under the act in the event the landowners are prevented from tying into the municipal sewerage system. Sections 2 and 3 grant to the Commission the right to acquire in the towns of Holden and Rutland, by eminent domain or otherwise, land, water rights, rights of way, or easements "necessary or desirable for accomplishing any purpose mentioned in this act . . .." Sections 4, 5, and 6 establish the rights and liabilities of the Commission and the towns with regard to the construction of sewers. Sections 7 and 8 provide for the connection of local sewers to the sewer lines to be constructed by the Commission, and for the compensation to be paid to the Commonwealth for the use of the new sewer lines. Section 9 authorizes the Commission and the city of Worcester to enter into a contract requiring the city to convey and finally dispose of the sewage from the towns of Holden and Rutland; § 10 authorizes the city of Worcester to borrow the money necessary to accomplish the purposes of the act. Section 11 provides for the funding of the over-all project.

Examination of the provisions of the 1938 act, consisting of seven sections, also fails to disclose any legislative intention to confer a right of action on private landowners who are prevented from connecting to the municipal sewerage system. Like the 1932 act, the title of this act evidences the purpose of the measure: *"An Act authorizing the purchase of lands and the construction of works for improving the distribution of water from the sources of supply to the metroplitan water district and more adequately preventing*

*pollution of the sources of water supply of said district.*"
St. 1938, c. 460. In § 1, the Commission is authorized to
construct aqueducts, pipe lines, and other works "for the
purpose of improving the distribution of water from the
sources of supply to the metropolitan water district and
more adequately preventing pollution of the sources of
water supply of said district . . .." Sections 2 and 3 provide
for the acquisition of land, water rights, rights of way, or
easements by eminent domain or otherwise. Section 4 pro-
vides for the disposition of property so acquired. Sections 5
and 6 set out the rights and liabilities of the Commission and
the municipalities affected by the extension of the water
supply distribution system.

None of these provisions indicates any intention by the
Legislature to grant to private landowners unable to con-
nect to the local sewerage system a right of action against a
governmental body obligated by the contract to maintain or
construct the system. Indeed, there is not even any mention
of a sewerage system in the act. Therefore, the plaintiffs do
not come within the term "person[s] interested" as used in
§ 7 of the act and are not authorized thereby to bring this
action to enforce the provisions of any of the agreements in
question. Nor are they beneficiaries under the contracts,
such as would entitle them to a right of action, under any
other theory. Whether a person who is affected by the
pollution of his water supply as a result of a breach of these
contracts may recover is a question we need not decide; the
plaintiffs here, however, are clearly not intended benefi-
ciaries of these agreements and thus are without a right to
secure performance. See Restatement (Second) of Contracts
§§ 133, 145 (1) (Tent. Drafts Nos. 1-7, 1973). We therefore
conclude that they lack standing to bring this action against
the Commission.

2. The plaintiffs claim that they have standing to bring an
action against Holden and Rutland for violating their
agreements with the Commission to keep their sewerage
systems in good repair. They base their claim on the same
provisions of the 1932 and 1938 special acts they relied on

for standing against the Commission. What we said with regard to the plaintiffs' standing against the Commission applies equally with regard to the claims against the two towns. As to the plaintiffs' standing, there is no material difference between an action against the Commission and one against any other party to the contracts. It follows that the plaintiffs lack standing under the special acts (St. 1932, c. 262, § 12, and St. 1938, c. 460, § 7) to maintain this action against the towns.

The fact that the plaintiffs are also seeking a declaration of rights with regard to the contracts[7] does not improve their position. *Westland Hous. Corp.* v. *Commissioner of Ins.,* 352 Mass. 374, 383 (1967). See *Sisters of the Holy Cross* v. *Brookline,* 347 Mass. 486, 491 (1964).

The only other basis on which the plaintiffs claim standing to maintain this suit against the towns is their claim for a declaration of rights as to the assessment policy of Holden.[8] Because of this policy, it is argued, the plaintiff Sundin was required to pay sewer assessments notwithstanding the fact that the moratorium prevented it from connecting its properties to the municipal sewer system. As to all other plaintiffs, we perceive no standing to challenge this policy. These plaintiffs cannot rely on G. L. c. 231A for standing to challenge the validity of an official act without showing the existence of other statutory authority for suing the towns. See *Povey* v. *School Comm. of Medford,* 333 Mass. 70, 71-72 (1955); *Chase* v. *Planning Bd. of Watertown,* 4 Mass. App. Ct. 430, 431 (1976). No such statutory authority has been shown.

Sundin itself may have been able to challenge the validity of the assessment in a suit for declaratory relief brought prior to the commitment of the assessment to the tax collec-

---

[7] The statute governing declaratory relief authorizes the Superior Court "on appropriate proceedings" to make "binding declarations of right, duty, status and other legal relations" under "written contracts." G. L. c. 231A, §§ 1, 2.

[8] See note 5, *supra,* setting out the town's assessment policy.

tor. See *California Village Corp.* v. *East Longmeadow*, 4
Mass. App. Ct. 128, 129-130 (1976); *Zambernardi* v. *Select-
men of Wilmington*, 2 Mass. App. Ct. 873 (1974). See also
*East Chop Tennis Club* v. *Massachusetts Comm'n Against
Discrimination*, 364 Mass. 444, 449-450 (1973) (distinguish-
ing *Meenes* v. *Goldberg*, 331 Mass. 688, 691-692 [1954], in
which this court determined that the plaintiffs could obtain
declaratory relief as to the validity of a lien for the nonpay-
ment of taxes, including a sewer assessment). However, it
appears from the complaint that the assessment has been
committed to the tax collector for collection. Therefore,
Sundin's only avenue of relief lies with the administrative
remedies provided by G. L. c. 80, by way of a petition for
abatement filed with the board of selectmen (§§ 5, 6), with
a right of appeal to either the Superior Court (§ 7) or to the
county commissioners (§ 10). General Laws c. 80 sets out a
comprehensive and uniform statutory scheme of adminis-
trative appeals and judicial review regarding assessments
for sewers and other betterments.[9] See *Lowell* v. *Lowell
Bldg. Corp.*, 309 Mass. 165, 169-170 (1941); *Berriault* v.
*Wareham Fire Dist.*, 360 Mass. 160, 168 n.10 (1971). In
order to avoid frustrating the statutory scheme the admin-
istrative procedure must be exhausted before declaratory
relief can be granted. *Assuncao's Case*, 372 Mass. 6, 8-9
(1977). *East Chop Tennis Club* v. *Massachusetts Comm'n
Against Discrimination, supra* at 446-448. *Gordon* v. *Hard-
ware Mut. Cas. Co.*, 361 Mass. 582, 584-586, 587 (1972).
*Saint Luke's Hosp.* v. *Labor Relations Comm'n*, 320 Mass.
467, 469-470 (1946). The rule applies even through adminis-
trative proceedings are not pending (*J. & J. Enterprises,
Inc.* v. *Martignetti*, 369 Mass. 535, 539-540 [1976]), and

---

[9] See in particular § 17 providing that "[w]henever a formal vote or
order for the laying out or construction of a public improvement, or for
the taking of land therefor, states that betterments are to be assessed, *no
betterments shall be assessed except under this chapter or chapter eighty
A, and all proceedings relating to such betterments shall be as herein or
therein provided, notwithstanding any special act hitherto enacted*" (em-
phasis supplied).

even though administrative relief is no longer available because of the failure to seek such relief within the time set by statute (*Goldman* v. *Planning Bd. of Burlington,* 347 Mass. 320, 325-326 [1964]). Sundin has not demonstrated that the pursuit of a petition for abatement before the board of selectmen, and a possible appeal from an adverse decision to the Superior Court or the county commissioners, would have been futile. See *Gordon* v. *Hardware Mut. Cas. Co., supra* at 586.[10] Nor has it demonstrated that special circumstances exist which would justify departing from the general rule. See *Goldman* v. *Planning Bd. of Burlington, supra* at 325-326.

Because the plaintiffs have failed to show any authority under the special acts or the declaratory judgment statute for bringing an action against the towns of Holden and Rutland, the present action cannot be maintained as to these defendants.

3. The only authority on which the plaintiffs rely for standing against the Division to challenge the constitutionality of its so called moratorium order is G. L. c. 231A. Section 1 of that statute provides that the Superior Court "may on appropriate proceedings make binding declarations of right, duty, status and other legal relations . . . ." Section 2, as amended by St. 1974, c. 630, § 1, in material part, provides as follows: "Said procedure under section one may be used in the superior court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any . . . state agency or official which practices or procedures are alleged to be in violation of the Constitution of the United States or of the constitution or laws of the commonwealth . . . which violation has been consistent-

---

[10] We do not rest this conclusion on Sundin's failure to file an affidavit "stating that the [administrative] practice or procedure . . . [challenged] is known to exist by the agency . . . and that reliance on administrative relief would be futile." Such affidavit must be filed with the complaint to meet the defense that the plaintiffs have failed to exhaust their administrative remedies. G. L. c. 231A, § 3, as amended by St. 1974, c. 630, § 2.

ly repeated . . .. For the purpose of this section practices or procedures mean the customary and usual method of conducting . . . state agency or official business." Therefore, in order to have standing to obtain relief under these provisions, the plaintiffs must set forth clearly in their complaint facts showing that the Division's order established or was part of a practice or procedure; that the practice or procedure was the customary and usual method of conducting the Division's business; that the practice or procedure violated the laws or Constitution of the Commonwealth or the United States Constitution; and that the violation had been consistently repeated. The plaintiffs have made no such allegations. They thus have failed to state a claim against the Division within the provisions of G. L. c. 231A, and the judge correctly allowed the Commission's motion to dismiss.

Even if the plaintiffs could make the allegations necessary to state a claim under G. L. c. 231A, they would not be entitled to declaratory relief because they failed to exhaust their administrative remedies.

Under G. L. c. 21, § 43 (2), as appearing in St. 1973, c. 546, § 9, no one is allowed to "use any sewer extension or connection, without a currently valid permit issued by the director . . . ." The plaintiffs, therefore, were obligated to seek from the director of the Division a permit to connect their properties to the municipal sewer system. If they applied and the director denied the applications, the plaintiffs would have a right of review under G. L. c. 21, § 46A, inserted by St. 1973, c. 546, § 13, which authorizes "[a]ny person aggrieved by an order, permit determination or other action of the director" to "obtain judicial review by filing an application for review in the superior court within thirty days after receipt of notice of the final decision of the director." We are mindful of the allegation that the towns of Holden and Rutland withdrew applications for sewer permits submitted to the Division in behalf of the plaintiffs.[11] However, the plaintiffs had the right to submit the

---

[11] It appears from the complaint that no application for a sewer permit was submitted to the Division in behalf of Stately Homes, Inc.

applications in their own behalf, as permitted by § 43 and recognized by the director in his order on January 6, 1976.[12] Any plaintiff whose application was denied would have the right under § 46A to judicial review of the decision.

We cannot say that the judge was wrong in refusing to declare the plaintiffs' rights under the director's order in view of the fact that the Legislature has prescribed a comprehensive scheme for administrative proceedings and judicial review in a carefully circumscribed area of public concern. *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 446-448 (1973). *Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass. 582, 584, 586-587 (1972). *Saint Luke's Hosp.* v. *Labor Relations Comm'n,* 320 Mass. 467, 469-470 (1946). In 1966, the Legislature adopted the Massachusetts Clean Waters Act creating the Division. St. 1966, c. 685, § 1. The statute provides that "[i]t shall be the duty and responsibility of the division to enhance the quality and value of water resources and to establish a program for the prevention, control, and abatement of water pollution." G. L. c. 21, § 27, as appearing in St. 1973, c. 546, § 3. As a means of carrying out this mandate the Legislature established a procedure whereby anyone who wished to discharge pollutants into the waters of the Commonwealth or use any sewer extension or connection would have to obtain a permit from the director. G. L. c. 21, §§ 42, 43 (2). It established criminal and civil penalties for those who failed to comply with the permit requirement. G. L. c. 21, § 42. In § 43, the Legislature provided in specific terms the procedure to be followed by those seeking permits. Judicial intervention prior to compliance with this procedure would frustrate the intent of the Legislature to grant to the Division the authority and duty to determine, in discharging its broad responsibility to prevent water pollution, whether to issue sewer permits to par-

---

[12] The order reads in pertinent part: "No extension of or connection to the municipal sewerage system in any gallonage amount or for any purpose may be made unless authorized by the Division, through the issuance of a sewer extension or connection permit. The Division will process for denial any such permit application unless . . . ."

ticular individuals. None of the plaintiffs has shown that pursuit of the statutorily mandated permit procedure would be useless.[13] Nor has any plaintiff demonstrated that exceptional circumstances exist which would have required the judge to allow the action to proceed against the Division. See *Goldblatt* v. *Corporation Counsel of Boston*, 360 Mass. 660, 663-664 (1971); *Goldman* v. *Planning Bd. of Burlington*, 347 Mass. 320, 326 (1964).

In view of the absence of allegations in the complaint sufficient to establish that the plaintiffs have met the requirements of G. L. c. 231A, and, further, the failure of the plaintiffs to exhaust their administrative remedies, the complaint against the Division was properly dismissed.

4. The plaintiffs charge that the city of Worcester failed to live up to its obligations under its 1933 agreement with the Commission. They base their standing to sue the city on the provision in St. 1932, c. 262, § 12, authorizing "person[s] interested" to bring suit to enforce the provisions of any agreement made under the 1932 special act. What we said in parts 1 and 2 of this opinion with regard to the plaintiffs' lack of standing against the Commission and the towns of Holden and Rutland under the special statutes applies equally to the city of Worcester.

The only other basis for standing advanced by the plaintiffs is that the city must be joined because it is a necessary party under G. L. c. 231A, § 8. Since the plaintiffs cannot maintain their action for declaratory relief against the other parties, they cannot maintain it on this ground against the city. The plaintiffs point to no other authority for suing the city for declaratory relief. We perceive none.[14]

*Judgments affirmed.*

[13] We do not base this conclusion on the plaintiffs' failure to file affidavits under G. L. c. 231A, § 3. See note 10 *supra*.

[14] Because of our disposition of the case we find it unnecessary to consider the city's argument that the 1932 special act authorizing and requiring the contract between the city of Worcester and the Metropolitan District Water Supply Commission has been modified by St. 1968, c. 752 (as amended by St. 1977, c. 99, St. 1976, c. 12, St. 1973, c. 680, St. 1973,

c. 184, St. 1972, c. 222, and St. 1971, c. 591), which allows the city of Worcester, and the Metropolitan District Commission, the towns of Holden and Rutland and certain other municipalities to create the Upper Blackstone Water Pollution Abatement District for the purpose (among others) of acquiring, contructirig, maintaining, and operating "such trunk sewers, pumping stations, intercepting sewers, connection, sewage treatment works, laboratories and other works as may be required for collecting, treating and disposing of sewage and other waterborne wastes to be discharged from the sewerage systems of said city, towns or districts." St. 1968, c. 752, § 6.