EDWARD J. GALLAGHER *vs.* METROPOLITAN DISTRICT
COMMISSION
(and a companion case[1]).

Suffolk.    October 7, 1976. — January 6, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Metropolitan District Commission.    Labor Relations Commission.    La-
bor,* Public employees.    *Public Employment.    Words,* "District."

Employees of the Metropolitan District Commission are State em-
ployees for the purposes of G. L. c. 150E, rather than "district"
employees. [698]
Exhaustion of administrative remedies was not required where the is-
sue presented was purely a question of law and there was no factual
determination to be made by the agency. [699]

CIVIL ACTIONS commenced in the Superior Court on
April 7, 1975, and May 6, 1975.

The cases were heard by *Morse,* J., on motions to
dismiss.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Richard S. Daniels, Jr.,* for the plaintiff.

*Garry J. Wooters (Frederick V. Casselman* with him)
for the Labor Relations Commission.

*William A. Schroeder,* Assistant Attorney General, for
the Metropolitan District Commission.

HENNESSEY, C.J.    The plaintiff is the president of Local
1242 of the American Federation of State, County and
Municipal Employees, AFL-CIO (Local 1242), which had
for several years been the certified collective bargaining

---

[1] The companion case named as defendants the chairman and mem-
bers of the Labor Relations Commission and the Secretary of Adminis-
tration for the Commonwealth in addition to the Commissioner of the
Metropolitan District Commission.

representative of approximately 1,800 employees of the Metropolitan District Commission (MDC). He commenced these two consolidated actions in the Superior Court seeking injunctive relief ordering the Commissioner of the MDC to bargain collectively with Local 1242 and ordering the Labor Relations Commission to cease their interference with the collective bargaining agreement in effect between Local 1242 and the MDC. Both actions were dismissed pursuant to motions to dismiss under Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974), made by all defendants, and the plaintiff appeals from those dismissals. We conclude that there was no error and that the judgments of dismissal must be affirmed.

The dispute now before us concerns the status of Local 1242 under the recently enacted legislative overhaul of the statutory scheme regulating the collective bargaining rights of public employees. See G. L. c. 150E, inserted by St. 1973, c. 1078, § 2. Statute 1973, c. 1078, § 1, repealed G. L. c. 149, §§ 178D, 178F-178N. The determination of that status hinges ultimately on whether MDC employees are State employees or whether they are employed by a "district." See G. L. c. 150E, § 1. If MDC employees are State employees, the MDC will no longer be a district bargaining unit under the new statutory and regulatory scheme, and Local 1242 will lose its certification as exclusive bargaining representative for MDC employees.

Local 1242 was certified as the collective bargaining representative of MDC employees pursuant to the provisions of G. L. c. 149, § 178F, repealed by St. 1973, c. 1078, § 1, which was applicable only to employees of the Commonwealth.[2] Section 178F (1), as appearing in St. 1967,

---

[2] Collective bargaining rights of other public employees, including employees of "districts," were covered by G. L. c. 149, §§ 178G-178N, repealed by St. 1973, c. 1078, § 1. Under G. L. c. 149, § 178I, other public employees were given the power to bargain over a far wider range of subjects than were State employees, extending to wages, hours, and other conditions of employment. There appears to have been no dispute under the former statute that MDC employees were State employees for the purposes of public employee labor relations, even though that classification limited their rights to bargain collectively.

c. 774, defined "employee" as "any employee of the commonwealth assigned to work in any department, board, commission or other agency thereof . . ." and defined "employer" as "the commonwealth, acting through a department or agency head as agent, or any person so designated by such department or agency head." Section 178F (6) limited the scope of State employee collective bargaining to conditions of employment. Pursuant to § 178F, Local 1242 and the Commissioner of the MDC, the representative of the Commonwealth for the purposes of collective bargaining under § 178F (1), entered into a written contract covering working conditions of MDC employees.

Effective July 1, 1974, § 178F was superseded by G. L. c. 150E, which established a uniform collective bargaining scheme for all public employees and expanded the scope of collective bargaining to include "wages, hours, standards of productivity and performance, and any other terms and conditions of employment." G. L. c. 150E, § 6. General Laws c. 150E, § 1, altered the definition of the Commonwealth as employer by designating the Commissioner of Administration as the sole authorized representative of the Commonwealth for collective bargaining purposes. Thus, under G. L. c. 150E, the "employer" for the purposes of collective bargaining for all State employees is the Commissioner of Administration rather than the head of the department or agency which comprised the bargaining unit under the former statute. However, the "employer" under G. L. c. 150E, § 1, for employees of a district is the chief executive officer of the political subdivision.

Under the former statute, G. L. c. 149, § 178F (3), the designation of the appropriate bargaining unit for State employees was a matter determined by mutual agreement of the employee organization and the appropriate department head, based on considerations of community of interest, including such factors as similar working conditions, common supervision, and common physical location, and subject to the approval of the director of personnel and standardization. The new statutory provision, G. L. c. 150E, § 3, commands the Labor Relations Commission

to "prescribe rules and regulations and establish procedures for the determination of appropriate bargaining units which shall be consistent with the purposes of providing for stable and continuing labor relations, giving due regard to such criteria as community of interest, efficiency of operations and effective dealings, and to safeguarding the rights of employees to effective representation."

The Labor Relations Commission, under the authority vested in it by G. L. c. 23, § 9R, as amended by St. 1973, c. 1078, § 2A, and by G. L. c. 150E, § 3, issued on July 1, 1974, its Rules and Regulations Relating to the Administration of an Act Providing for Collective Bargaining for Public Employees. Article 2 of those regulations covers all proceedings with respect to questions of representation under G. L. c. 150E, § 4, which provides in part that "[p]ublic employers may recognize an employee organization designated by the majority of the employees *in an appropriate bargaining unit* as the exclusive representative of all the employees in such unit for the purpose of collective bargaining" (emphasis added) and which sets out procedures by which the bargaining representative for that unit may be certified.[3] The Labor Relations Commission filed an amendment to art. 2 which provides that "[w]ith respect to employees of the Commonwealth . . . no petition

---

[3] General Laws c. 150E, § 4, further provides: "The commission, upon receipt of an employer's petition alleging that one or more employee organizations claims to represent a substantial number of the employees in a bargaining unit, or upon receipt of an employee organization's petition that a substantial number of the employees in a bargaining unit wish to be represented by the petitioner, or upon receipt of a petition filed by or on behalf of a substantial number of the employees in a unit alleging that the exclusive representative therefor no longer represents a majority of the employees therein, shall investigate, and if it has reasonable cause to believe that a substantial question of representation exists, shall provide for an appropriate hearing upon due notice. If, after hearing, the commission finds that there is a controversy concerning the representation of employees, it shall direct an election by secret ballot or shall use any other suitable method to determine whether, or by which employee organization the employees in an appropriate unit desire to be represented, and shall certify any employee organization which received a majority of the votes in such election as the exclusive representative of such employees."

filed under the provisions of Section 4 of the Law shall be entertained, except in extraordinary circumstances, where the petition seeks certification in a bargaining unit not in substantial accordance with the provisions of this subsection. Bargaining units shall be established on a statewide basis, with one unit for each of the following occupational groups .... "[4]

Subsequent to the promulgation of the amended regulations, pursuant to G. L. c. 150E, § 4, petitions were filed by an alliance of two unions, State Council # 41, AFSCME, and Service Employees International Union, AFL-CIO, seeking to represent the State employees classified by the amended regulations as Unit Two and Three employees, which could include MDC employees if they were properly categorized as State employees. On March 31, 1975, the plaintiff demanded that the Commissioner of the MDC bargain with Local 1242 over the new subjects of bargaining opened up by G. L. c. 150E. The Commissioner refused to bargain with Local 1242 in light of the new regulations. On April 7, 1975, the plaintiff commenced the first of these two actions, seeking an injunction ordering the Commissioner of the MDC to negotiate with Local 1242. On April 24, 1975, the Labor Relations Commission notified the plaintiff by letter that conferences would be held on the representation question on May 14 and 19, 1975. The plaintiff thereupon commenced the second of these two actions on May 6, 1975, naming as defendants the MDC Commissioner, the chairman and members of the Labor Relations Commission, and the Secretary of Administration, seeking to enjoin the defendants from interfering with the status

---

[4] The amended regulation divides all covered State employees into ten units. Nonprofessional employees: Unit 1 — Administrative and Clerical; Unit 2 — Service, Maintenance and Institutional; Unit 3 — Building Trades and Crafts; Unit 4 — Institutional Security; Unit 5 — Law Enforcement: Professional employees; Unit 6 — Administrative; Unit 7 — Health Care; Unit 8 — Social and Rehabilitative; Unit 9 — Engineering and Science; Unit 10 — Education.

This categorization of State employees into ten bargaining units represents a drastic change from the former situation in which State employees were separated into more than 200 bargaining units represented by dozens of labor organizations.

of Local 1242 as the exclusive bargaining representative for MDC employees.

The actions were consolidated for trial, and the Labor Relations Commission was granted leave to intervene in the first action pursuant to Mass. R. Civ. P. 24, 365 Mass. 769 (1974). The Labor Relations Commission moved to dismiss both actions on two grounds: (1) that the plaintiff failed to exhaust his administrative remedies and (2) that the Labor Relations Commission had exclusive primary jurisdiction over the subject matter of the dispute. The plaintiff requested a ruling by the court that the employer of the members of Local 1242 for the purposes of G. L. c. 150E is the Commissioner of the MDC. The court denied this request and ruled that as matter of law the G. L. c. 150E employer was the Commonwealth acting through the Secretary of Administration and that the MDC was not a "district" within the meaning of G. L. c. 150E, § 1. The plaintiff's actions were thereupon dismissed.

We conclude that there was no error. The court below was correct in ruling as matter of law that the employer of the members of Local 1242 for the purposes of G. L. c. 150E is the Commonwealth acting through the Commissioner of Administration.

The plaintiff argues that the MDC is a "district" within the meaning of G. L. c. 150E, § 1, rather than a department of the State government and that, therefore, the "employer" for the purposes of collective bargaining is the Commissioner of the MDC, as the chief executive officer of the district, rather than the Commonwealth acting through the Commissioner of Administration. The resolution of this question is determinative as to the designation of the appropriate bargaining unit for the MDC employees now represented by Local 1242. If the MDC is a "district," the existing bargaining unit may continue to be appropriate under G. L. c. 150E, § 3, while if the MDC is a department of the State government, its employees may be properly categorized by the Labor Relations Commission in one or more of the ten designated units.

While there appears to have been no practical difficulty in categorizing MDC employees as State employees under the former collective bargaining statute, whatever other ambiguity may have existed regarding the precise nature of the MDC, and the type of political entity it is, has been convincingly resolved by recently enacted changes in the statutory language governing the MDC. The former version of G. L. c. 28, § 1, as amended through St. 1967, c. 844, § 22, read as follows: "There shall be a metropolitan district commission, consisting of a commissioner and four associate commissioners.... Upon the expiration of the term of office of a commissioner or associate commissioner, his successor shall be appointed by the governor for a term coterminous with that of the governor." Statute 1975, c. 706, § 81, effective July 1, 1975, rewrote the section as follows: "There shall be in the executive office of environmental affairs a department of the metropolitan district commission, consisting of a commissioner and four associate commissioners.... The commissioner and associate commissioners shall be appointed and may be removed by the secretary of environmental affairs with the approval of the governor." The Legislature has clearly categorized the MDC as a department of the State government. The inclusion of the word "district" in the name of the commission is purely fortuitous and cannot be pointed to as having any relevance to the determination of whether the MDC falls within the statutory definition of "district."

While this amendment was not effective until after judgments were entered below in the cases now before us, the MDC has long been defined as a State department for the purposes of G. L. c. 29, relating to State finance, and G. L. c. 30, which contains general provisions relating to the organization and function of State government. These statutory provisions must be contrasted with, for example, G. L. c. 44, which pertains to municipal and district finance and which defines district as "a fire, water, sewer, water pollution abatement, refuse disposal, light, or improvement district, or any other district, howsoever named, formed for the purpose of carrying out any of the aforementioned

functions, whether established under general law or special act." G. L. c. 44, § 1, as amended by St. 1969, c. 505, § 5. Under G. L. c. 92, §§ 1, 9A, and 10, the MDC is charged with the operation of sewers, refuse disposal facilities, and waterworks for groups of towns specified by statute. Yet it is clear from the inclusion of the MDC under the State department finance statute that the MDC is not a "district" for the purposes of financial regulation.

The Appeals Court recently had occasion to consider the status of MDC employees in *Mitchell* v. *Metropolitan Dist. Comm'n*, 4 Mass. App. Ct. 484 (1976), an action by MDC police officers against the MDC to recover overtime pay allegedly owed to them. The Appeals Court concluded that the MDC police officers were State employees, citing numerous statutory provisions which supported its reasoning. The MDC is subject to the laws regulating the administration of Commonwealth agencies. G. L. c. 29, § 1. G. L. c. 30, § 1. It makes its expenditures not with funds of its own but with Commonwealth funds made available to it from the State treasury by periodic appropriations.[5] See, e.g., G. L. c. 29, §§ 9A, 12, 13, 14, 26, 27. The power of the MDC to use the funds so appropriated is rigorously limited by fiscal constraints imposed by other officers and agencies of the Commonwealth. See, e.g., G. L. c. 7, § 13; G. L. c. 29, §§ 9B, 18, 29.

The Appeals Court therefore concluded that, if any liability for the overtime pay existed, the liability was that of the Commonwealth and not that of the MDC. The same considerations lead us to conclude that MDC employees are employees of the Commonwealth. While it is true that MDC financing differs from that of most State departments, those differences are not relevant for the purposes of determining the appropriate employer for collective bargaining purposes.

---

[5] While many MDC activities are ultimately financed by assessments on the cities and towns served by it and by revenues generated from the use of lands under MDC control, the sums so realized, like other Commonwealth funds, are required to be paid into the State treasury. See, e.g., G. L. c. 29, §§ 47A, 51; G. L. c. 92, §§ 5-8, 26, 48, 57, 58, 60.

The defendants have argued that the plaintiff failed to exhaust his administrative remedies and that this court should, therefore, not reach the merits of these cases. The question whether MDC employees are State employees for the purposes of G. L. c. 150E is a pure question of law the resolution of which is not uniquely committed to resolution through administrative fact-finding. Cf. *Massachusetts Probation Ass'n* v. *Commissioner of Administration,* 370 Mass. 651 (1976). It would only further complicate an already lengthy and complicated administrative process of certifying collective bargaining representatives for the appropriate State employee bargaining units to force this particular question to be resolved through further administrative proceedings.[6] However, we stress that whenever there is a factual determination to be made by the agency, failure to exhaust administrative remedies will be fatal in an action seeking judicial relief. *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444 (1973). Cf. *Saint Luke's Hosp.* v. *Labor Relations Comm'n,* 320 Mass. 467 (1946).

Since we conclude that MDC employees are State employees for the purposes of G. L. c. 150E, it follows that

---

[6] However, the question in which of the ten designated State employee units the MDC employees should be categorized is one which is particularly appropriate for resolution through the administrative fact-finding process. The Labor Relations Commission has been conducting a series of hearings involving the categorization of 2,200 job classifications into the designated bargaining units. Approximately forty labor organizations are seeking to represent one or more of these units, and the representative of each unit will be determined by election after the unit designation process is completed.

The inclusion of MDC employees within a larger bargaining unit obviates the necessity of answering the plaintiff's contention that G. L. c. 150E, § 4, does not give the Labor Relations Commission jurisdiction over this representation dispute. The redefinition of State employer bargaining units was merely the beginning of a process which after the lengthy petitioning, hearing, and election process specified in § 4 and art. 2 of the rules and regulations will result in certification of bargaining representatives for the designated units. Until this process is completed, the terms of the existing contract between Local 1242 and the MDC will continue to be honored by the Commonwealth. Local 1242 has been given notice of the representation hearings as required by art. 2, § 6, of the rules and regulations, and has refused to participate in the administrative hearings.

no injunctive relief against further proceedings by the Labor Relations Commission consistent with the statute and its rules and regulations is appropriate and that the judgments dismissing the plaintiff's actions were correctly entered.

*Judgments affirmed.*

