PETER J. MURPHY & others *vs.* ADMINISTRATOR OF THE DIVISION OF PERSONNEL ADMINISTRATION & others.

Suffolk. November 6, 1978. — February 2, 1979.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Administrative Law,* Exhaustion of remedies, Primary jurisdiction. *Commonwealth,* Officers and employees. *Practice, Civil,* Relief from judgment.

Where an issue in controversy turned on questions of law which had not been committed to agency discretion, the case was properly commenced in court without prior administrative proceedings. [220-222]

Class reallocations in the positions of thirty-five professional employees of the Commonwealth, made by the General Court's Joint Committee on Ways and Means without a request by the appointing authority or the Personnel Administrator, were invalid for want of compliance with G. L. c. 30, § 45(4). [222-227]

A judge did not abuse his discretion in denying the plaintiffs relief under Mass. R. Civ. P. 60(b)(1) where the alleged "new" evidence was not unknown to either the plaintiffs or their attorneys at the time the complaint was filed. [227-228]

CIVIL ACTION commenced in the Superior Court on November 1, 1974.

The case was heard by *George, J.,* a District Court judge sitting under statutory authority, and a motion for relief from judgment was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Morris M. Goldings (Herbert D. Friedman* with him) for the plaintiffs.

*Alan K. Posner,* Assistant Attorney General, for the defendants.

HENNESSEY, C.J. The action before us is an appeal from a Superior Court ruling dismissing the complaint of

thirty-five professional employees of the Commonwealth who assert that "class reallocations"[1] of their positions in 1972 and 1973 by the General Court's Joint Committee on Ways and Means (hereafter Joint Committee) are binding on the defendants, the Administrator of the Division of Personnel Administration (hereafter Personnel Administrator[2]) and the Secretary of Administration and Finance of the Commonwealth. In accordance with these reallocations, the plaintiffs seek to compel the defendants to reclassify their positions and to pay them the compensation for which these grades are entitled. We affirm.

The material facts may be summarized as follows. In June, 1972, and June and July, 1973, the Joint Committee approved schedules of positions which upgraded the plaintiffs' jobs by two, and in some cases three, job group levels. For some of the plaintiffs (hereafter designated as the Murphy group), reallocations were initiated and approved by the Joint Committee on its own motion. Owing to the absence of an administrative request for these reallocations, the Personnel Administrator refused to permit their release, and the Murphy group continued to work at existing pay levels. Subsequently, tax counsel members of the Murphy group appealed to the Personnel Bureau and then to the Personnel Appeals Board, pursuant to G. L. c. 30, § 49, seeking a three-job group reallocation. Although the Personnel Bureau denied the claim, the Personnel Appeals Board in April, 1975, awarded these attorneys a two-job group increase, which the Personnel Administrator has since honored.

---

[1] A "class" is a group of State positions which are similar enough so that the same descriptive title may be used to designate all positions in that group. G. L. c. 30, § 45(9). When a class is "reallocated," it is assigned to a new level on the Commonwealth's pay plan, which is set forth in G. L. c. 30, § 46.

[2] At the time that the plaintiffs filed their complaint, the Commonwealth's personnel responsibilities were coordinated by the Director of Personnel and Standardization. Based on a 1974 reorganization effective July 1, 1975, all such activities have been coordinated by the Personnel Administrator. St. 1974, c. 835.

The other group of professional employees comprising the plaintiffs in this action are lawyers for whom the Personnel Administrator in 1973 recommended upward reallocations of one job group. Despite the Personnel Administrator's limited request, the Joint Committee reallocated each class upward by two job groups. As with the Murphy group reallocations, the Personnel Administrator released allocations no greater than those requested; thus, upgrades of only a single job group were allowed. Unlike the tax counsel members of the Murphy group, no member of this second group of State employees exercised his right of appeal. Instead, these employees joined with the Murphy group, whose tax counsel members continued to seek the additional job group reallocated by the Joint Committee, and brought this action on November 1, 1974, in the Superior Court in Suffolk County.

Following the filing of an answer and a statement of agreed facts, the trial judge in September, 1977, granted the defendants' motion to dismiss on the grounds that (1) the reallocations by the Joint Committee were invalid under G. L. c. 30, § 45; and (2) all but ten of the thirty-five plaintiffs had failed to exhaust administrative remedies. A subsequent motion to vacate the judgment under Mass. R. Civ. P. 60(b)(1) and (6), 365 Mass. 828 (1974), was denied by a judge in the Superior Court.

On appeal, the plaintiffs challenge all these rulings and specifically contend that the Joint Committee's reallocations of their jobs were incorporated by reference into the General Court's 1972 and 1973 budgetary appropriations. We granted the plaintiffs' request for direct appellate review on April 12, 1978.

Because we find no basis in law for authorizing the job reallocations which the plaintiffs seek, we affirm the judge's dismissal of the plaintiffs' complaint. Despite this principal holding, we nevertheless conclude that it was erroneous in this case for the judge to mandate exhaustion of administrative remedies as a prerequisite for judicial action.

1. *Exhaustion of Administrative Remedies — Primary Jurisdiction.*

As a preliminary matter, we consider the propriety of the decision of the lower court judge that all plaintiffs in this action were obliged to exhaust administrative remedies before seeking judicial relief.[3] In recent years this court has frequently emphasized the importance of judicial application of exhaustion principles when litigation is initiated before an administrative agency. See, e.g., *Assuncao's Case,* 372 Mass. 6 (1977); *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444 (1973). By permitting an agency to apply its expertise to the statutory scheme which it is charged to enforce, courts preserve the integrity of the administrative process while sparing the judiciary the burden of reviewing administrative proceedings in a piecemeal fashion. *Assuncao's Case, supra* at 8-9.

The problem we confront here, however, is more correctly termed one of "primary jurisdiction" or "prior resort" than one of exhaustion. The doctrine of exhaustion of administrative remedies contemplates a situation where some administrative action has begun, but has not yet been completed; where there is no administrative proceeding under way, the exhaustion doctrine has no application. In contrast, primary jurisdiction situations arise in cases where a plaintiff, in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy. See *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535,

---

[3] In reaching his conclusion, the judge rejected the plaintiffs' contention that pursuit of administrative remedies before the Personnel Bureau was futile. See *Ciszewski* v. *Industrial Accident Bd.,* 367 Mass. 135, 141 (1975); *Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass. 582, 586-587 (1972); *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 84 (1968). Viewing the positive results obtained by those plaintiffs who had sought administrative relief, the judge stated that similar such actions were potentially productive, and therefore required by the exhaustion doctrine.

539-541 (1976); Jaffe, Primary Jurisdiction, 77 Harv. L. Rev. 1037, 1037 (1964); Comment, Confusion of Exhaustion of Administrative Remedies & Primary Jurisdiction Doctrines, 7 Suffolk U. L. Rev. 124, 136-137 (1972). We describe the circumstances herein as a primary jurisdiction case, because the plaintiffs, prior to their filing a complaint, were subject to no administrative action.

Having noted the procedural distinction between exhaustion and primary jurisdiction, we observe that the rationale underlying primary jurisdiction is in substance much the same as that which supports exhaustion. The doctrine of primary jurisdiction, like exhaustion, "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Nader* v. *Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976), quoting from *United States* v. *Western Pac. R.R.*, 352 U.S. 59, 63 (1956). As Professor Davis has stated: "The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and of courts. . . .[A] court [normally] should not act upon subject matter that is peculiarly within the agency's specialized field without taking into account what the agency has to offer, for otherwise parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements." 3 K. C. Davis, Administrative Law § 19.01, at 5 (1958). Thus, the doctrine is particularly applicable when an action raises a question of the validity of an agency practice, see, e.g., *Danna* v. *Air France*, 463 F.2d 407, 409 (2d Cir. 1972); *Southwestern Sugar & Molasses Co.* v. *River Terminals Corp.*, 360 U.S. 411, 417-418 (1959), or when the issue in litigation involves "technical questions of fact uniquely within the expertise and experience of an agency." *Nader* v. *Allegheny Airlines, Inc.*, *supra* at 304.

The primary jurisdiction doctrine does not apply, however, when the issue in controversy turns on questions of law which have not been committed to agency discretion.

*New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S. S. Auth.*, 329 Mass. 243, 247-248 (1952). *Locust Cartage Co.* v. *Transamerican Freight Lines, Inc.*, 430 F.2d 334, 340 n.5 (1st Cir.), cert. denied, 400 U.S. 964 (1970), *FTC* v. *Feldman*, 532 F.2d 1092 (7th Cir. 1976). *Lugo* v. *Simon*, 426 F. Supp. 28, 32 (N.D. Ohio 1976). 2 F.E. Cooper, State Administrative Law 569 (1965). Cf. *Gallagher* v. *Metropolitan Dist. Comm'n*, 371 Mass. 691, 699 (1977); *McKart* v. *United States*, 395 U.S. 185, 198-199 (1969). Since the linchpin of the present controversy is the interpretation to be given to appropriation acts having no special reference to the Personnel Bureau, see *infra*, we believe that the instant case falls within this exception to the primary jurisdiction doctrine. No problem calling for the special expertise of the Commonwealth's Personnel Bureau is involved here. Nor will the resolution of the instant case by a court interfere with the development and administration of personnel department policy. Inasmuch as these considerations provide the underpinnings of primary jurisdiction, *United States Tour Operators Ass'n* v. *TWA, Inc.*, 556 F.2d 126, 130 (2d Cir. 1977), there is indeed no justification for the doctrine's application in a case such as this. Compare *Gallo* v. *Division of Water Pollution Control*, 374 Mass. 278, 288-289 (1978).

2. *Validity of Job Reallocations Promulgated by the Joint Committee.*

We now address the central question facing us in this appeal: whether the reallocations of the plaintiffs' jobs by the Joint Committee are entitled to the full force of law. Our inquiry begins with an examination of G. L. c. 30, § 45, the statutory provisions governing classification and pay of most State offices and positions.

The origins of the current c. 30, § 45, are traceable to 1955 when the General Court asked the Governor to develop a means for ending salary and classification inequities in State positions. That request led to a lengthy set

of recommendations known as the "Barrington Report,"[4] see Governor's Budget Recommendations for the fiscal year 1957, 1956 House Doc. No. 1, which, in turn, were implemented to provide the basis for G. L. c. 30, § 45. See St. 1956, c. 729. Under the provisions of this statute, the Personnel Administrator is delegated responsibility for establishing and administering the Commonwealth's classification and pay plan. In developing that plan, the Personnel Administrator determines the title, duties, and qualifications for each position and then allocates the position to a "class" and the class to a "job group" level on the State salary schedule as set forth in G. L. c. 30, § 46.

The instant case focuses on a discrete portion of the classification scheme: class reallocations. In reallocating a class, the Personnel Administrator reexamines the duties, required qualifications, and other characteristics of the positions in a given class. Then, based on the principle of fair and equal pay for similar work, he determines whether the class should be reallocated to a different job group on the pay scale. G. L. c. 30, § 45(3).

The procedural prerequisites for a valid reallocation are set forth in G. L. c. 30, § 45(4), and consist of four elements. First, a reallocation must be requested either by the appointing authority or by the Personnel Administrator. § 45(4)(*a*). Second, the Personnel Administrator, if he approves the reallocation, must prepare a written recommendation indicating his approval. § 45(4)(*b*). Next, the written recommendation complying with subsections (*a*) and (*b*) is filed with the Budget Director and with the Joint Committee. § 45(4)(*c*). Finally, the reallocation is scheduled for appropriation by the Joint Committee. § 45(4)(*d*).

Excluded from the reallocation procedure outlined in § 45(4) are "such offices and positions the pay for which is or shall be *otherwise fixed by law*" (emphasis added).

---

[4] The report took its name from the consultant firm which prepared the recommendations.

§ 45(3). It is the plaintiffs' position that language in 1972 and 1973 Budget Acts,[5] when read in conjunction with the relevant Joint Committee schedules, demonstrates that their job reallocations are "otherwise fixed by law" and thus exempt from the reallocation procedure originating with the Personnel Administrator.

While recognizing that no definition of this expression is supplied in the statute or in our cases, we find the plaintiffs' construction of the statute in the instant case to be without merit. The three principal sources of legislative authority which the plaintiffs draw on—St. 1972, c. 346; St. 1973, c. 466 and c. 1181—make no reference whatsoever to the Joint Committee's reallocations of their positions.[6] Rather, these provisions merely provide a pool of monies to fund personnel actions which are otherwise valid. The purpose of this type of general appropriation is to avoid the necessity for inserting into each individual agency budget a separate item for salary adjustments.

---

[5] The plaintiffs call our attention to three specific budgetary intems: (1) St. 1972, c. 346, § 2, Item 9992-0010; (2) St. 1973, c. 466, § 2, Item 1599-2015; and (3) St. 1973, c. 1181, § 2, Item 1599-2015.

[6] Typical of the provisions the plaintiffs rely on is Item 1599-2015 of St. 1973, c. 1181, § 2, which provides "[f]or a reserve to meet the cost of certain salary adjustments, including cost-of-living increases as authorized by . . . [various statutes which provide cost-of-living increases for State and county employees and for judges] including the cost of all said increases and adjustments for the period from December thirty-first, nineteen hundred and seventy-two, to June thirtieth, nineteen hundred and seventy-three, inclusive; provided, that the governor, upon recommendation of the commissioner of administration, is hereby authorized to transfer from the sum appropriated to other items of appropriation for the current fiscal year, which are available in whole or in part for personal services, such amounts as are necessary to meet the cost of said adjustments where the amounts otherwise available are insufficient for the purpose, to be in addition to amounts otherwise appropriated for said services for said fiscal year; and, provided further, that the governor, upon recommendation of the commissioner of administration, is further authorized to allocate the cost of such salary adjustments to the several state or other funds to which such items of appropriation are charged."

Our interpretation of these budgetary provisions is aided by the Appeals Court's similar analysis in a case almost identical to the one before us now. *Gavin* v. *Commonwealth*, 2 Mass. App. Ct. 833 (1974). The plaintiffs in the *Gavin* case, like those in the instant action, argued that their reallocations had been authorized by specific budget items. Indeed, the "salary reserve" provisions[7] cited by the *Gavin* plaintiffs are nearly indistinguishable from the budgetary language relied on by the plaintiffs in this case. Significantly, the court in *Gavin* rejected the plaintiffs' contention, concluding that nothing in these appropriation measures could be interpreted as evincing an intent to effect any change in the plaintiffs' job group. *Id.* Moreover, the Appeals Court contrasted the general appropriation items relied on by the plaintiffs there with a budgetary item passed the same day which expressly reallocated certain specifically identified positions to particular job groups.[8] Without ruling on the constitutionality of legislative reallocations,[9] we think it clear that, had the General Court intended to reallocate the plaintiffs' positions in the instant case, it would have done so with the same clarity and specificity as exhibited in the enactment referred to in *Gavin.* 2A Sands, Sutherland Statutory Construction § 51.02 (4th ed. 1973).

---

[7] See, e.g., St. 1970, c. 833, § 2, Item 1700-0010.

[8] Statute 1970, c. 837, § 1, provided inter alia:

"SECTION 1. Notwithstanding any provision ... of law to the contrary, the director of personnel and standardization is hereby authorized and directed to reallocate the following positions in the general salary schedule of the commonwealth to the following job groups:—

|  | From Job Group | To Job Group |
|---|---|---|
| Metropolitan District Commission Police | | |
| Metropolitan Police Superintendent | 22 | 24 |
| Metropolitan Police Deputy Superintendent | 20 | 22 |
| Metropolitan Police Captain | 18 | 20" |

[9] It is arguable that reallocation of executive department positions by the General Court violates art. 30 of our Declaration of Rights. See *Opinion of the Justices,* 375 Mass. 827 (1978); *Opinion of the Justices,* 369 Mass. 990 (1976); *Springer* v. *Government of the Philippine Islands,* 277 U.S. 189 (1928); Levi, Some Aspects of Separation of Powers, 76 Colum. L. Rev. 371 (1976).

The plaintiffs cite one additional legislative source as authority that the Joint Committee schedules are "otherwise fixed by law." Section 7 of c. 466 of the Acts of 1973,[10] they maintain, empowers the Joint Committee to reallocate personnel classifications sua sponte, without recommendation from the Personnel Administrator. This interpretation of § 7 is without foundation. The thrust of this provision is not to vest power in the Joint Committee, but rather to limit the purposes to which certain appropriations may be put. The reference to "schedules of permanent positions and salary rates as approved by the joint committee" should not be read as creating an alternative reallocation procedure. Since the procedure mandated by § 45(4) contemplates approval of personnel reallocations by the Joint Committee, this reference is perfectly consistent with the terms of the statute.

Thus, we conclude that the plaintiffs' positions have not been reallocated in a form "otherwise fixed by law" and that the reallocations are therefore invalid for want

---

[10] This provision states: "Amounts included for permanent positions in sums appropriated in section two for personal services are based upon schedules of permanent positions and salary rates as approved by the joint committee on ways and means, and, except as otherwise shown by the files of said committee, a copy of which shall be deposited with the bureau of personnel, no part of sums so appropriated in section two shall be available for payment of salaries of any additional permanent position, or for payments on account of reallocations of permanent positions, or for payments on account of any change of salary range or compensation of any permanent position, notwithstanding any special or general act to the contrary; provided, that no vacancy occurring in any classified permanent position included in said schedules of permanent positions may be filled in any manner except upon approval as required by rules and regulations established under the provisions of paragraph (6) of section forty-five of chapter thirty of the General Laws; and, provided further, that no part of sums appropriated in section two shall be available for the payment of overtime service to any employee of the commonwealth without the prior written approval of such overtime by the commissioner of administration, upon recommendation of the director of personnel and standardization, except where such overtime service is essential to replace the service of an employee necessary for the care of patients or inmates in institutions operated by the commonwealth."

of compliance with G. L. c. 30, § 45(4). Although at present it is unnecessary, if not impossible, to identify fully those positions which are "otherwise fixed by law," we suggest that the expression refers to those instances in which the Legislature has explicitly determined a salary by general law, see, e.g., G. L. c. 19, § 2 (setting the salary of the Commissioner of Mental Health), or where the Legislature has delegated the salary setting power to a board or agency, see, e.g., G. L. c. 6, § 104.[11] In each of these cases, the salaries are truly set by law and do not tie into the salary schedule prescribed in c. 30, § 46.

3. *Relief from Judgment under Rule 60(b).*

One final question remains for our consideration. Following entry of judgment in favor of the defendants, the plaintiffs filed a motion to vacate judgment under Mass. R. Civ. P. 60(b). Relief was sought in order to permit the court's consideration of the specific Joint Committee reallocation documents, which previously had not been introduced before the court. In support of the motion, the plaintiffs argued that they were unaware of the existence of these records until after the judge entered judgment in the defendants' favor. The judge denied the relief sought, and we believe he was correct in so ruling.

It is well established that denial of a motion under Rule 60(b) will be set aside only on a clear showing of an abuse of discretion. *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Administration & Fin.*, 369 Mass. 562, 565-566 (1976). *Nolan* v. *Weiner*, 4 Mass. App. Ct. 800 (1976). While the plaintiffs on appeal do not refer to any specific subsection of rule 60(b), we note that they relied on rule 60(b)(1) and (6) in their motion below. Rule 60(b)(1) allows the court to relieve a party or his legal representative from a final judgment, order, or proceeding due to "mis-

---

[11] Under this statute, inserted by St. 1958, c. 623, § 2, the retirement law commission is authorized to "appoint an executive secretary who shall . . . receive such salary as the commission with the approval of the governor and council may fix."

take, inadvertence, surprise, or excusable neglect." However, relief is granted under this section only if the party seeking relief demonstrates that the mistake, inadvertence, or neglect was excusable and "was not due to his own carelessness." Reporters' Notes, J. W. Smith & H. B. Zobel, Rules Practice 462 (1977). See *Ben Sager Chems. Int'l, Inc.* v. *E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977); *Cline* v. *Hoogland*, 518 F.2d 776, 778 (8th Cir. 1975).

We find no abuse of discretion in the judge's refusal to grant the plaintiffs' rule 60(b)(1) motion. The plaintiffs explicitly mentioned the Joint Committee schedules in their complaint,[12] which was filed over two years before the defendants moved to dismiss. Thus, the alleged "new" evidence cannot be said to have been unknown to either the plaintiffs or their attorneys. Similarly, we find no error in the judge's denial of relief under rule 60(b)(6).[13] Since a motion under this subsection is appropriate only when based on some reason other than those stated in rule 60(b)(1)-(5), see Reporters' Notes, Smith & Zobel, *supra* at 465, the plaintiffs lacked the ability to invoke this provision. The grounds on which they sought relief were included in the coverage of subsection (1) of rule 60(b).

*Judgment affirmed.*

---

[12] Paragraph 4 of the plaintiffs' complaint states: "On the date set forth in column 4 of Appendix A ... [of the complaint], the Joint Committee on Ways and Means of the General Court approved a schedule of permanent offices and positions which included a reallocation of the office or position of each Plaintiff from the job group set forth in column 5 of Appendix A to the job group set forth in column 6 of Appendix A."

[13] Rule 60(b)(6) provides that a court may relieve a party or his legal representative from a final judgment for "any ... reason [other than those listed in subsections (1) through (5)] justifying relief from the operation of the judgment." Extraordinary circumstances must be shown to exist to warrant the granting of this extraordinary relief. *Artco, Inc.* v. *DiFruscia*, 5 Mass. App. Ct. 513, 517 (1977), further appellate review denied, 373 Mass. 864 (1977).